Argued December 15, 1908, decided January 19, 1909.

McINTOSH *v.* McNAIR.

[99 Pac. 74.]

CORPORATIONS—STOCK—SALE—REMEDIES—EVIDENCE.

1. In an action to recover the purchase price of stock, where the amount to be paid for the stock is disputed by the purchaser, the value of the book accounts of the corporation cannot be shown by evidence of the value of the book accounts generally.

CORPORATIONS—STOCK—SALE—REMEDIES—EVIDENCE.

2. In an action to recover the purchase price of stock, where the amount of the purchase price was in dispute, evidence that, a month or more prior to

the sale, plaintiff had made a statement to the witness that defendant was unwilling to pay for the stock what it was worth, is not admissible as bearing on the price defendant actually agreed to pay for the stock.

TRIAL—QUESTION FOR JURY—CREDIBILITY OF WITNESSES.

3. The jury are the exclusive judges of the credibility of witnesses and the weight to be given to their testimony, and while the burden of proof is on plaintiff to sustain the averments of his complaint, if they believe his testimony, which is contradicted by the testimony of defendant, they are at liberty to find a verdict for plaintiff under Section 857, B. & C. Comp., providing that the jury are not bound to find in conformity with the declaration of any number of witnesses, which did not produce conviction in their minds, against a less number, or against a presumption or other evidence satisfying their minds.

APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE.

4. Where the record discloses that the controversy between the parties must be determined largely upon the testimony of plaintiff and defendant alone, the admission of incompetent or irrelevant testimony on behalf of either party is necessarily harmful.

CORPORATIONS—STOCK—SALE OF SHARES—REMEDIES—EVIDENCE.

5. In an action against the purchasers of shares of stock to recover a balance due on the price, where the amount which the purchaser was to pay is in dispute, evidence of the assets of the corporation, including the book accounts, was proper as tending to show the value of the capital stock and the probability as to the price to be paid by the purchaser.

WITNESSES—IMPEACHMENT—REPUTATION FOR INTEGRITY.

6. Under Section 852, B. & C. Comp., providing that a witness may be impeached by evidence that his general reputation for truth is bad, or that his moral character is such as to render him unworthy of belief, a witness cannot be impeached by showing that his general reputation for integrity is bad.

From Tillamook: WILLIAM GALLOWAY, Judge.

This is an action by Peter McIntosh against Alexander McNair to recover an alleged balance due plaintiff from defendant on the sale of certain shares of the capital stock in the McIntosh-McNair Company, a corporation. From a judgment in favor of defendant, plaintiff appeals. REVERSED.

For appellant there was a brief over the names of *Mr. Ralph R. Duniway* and *Mr. T. H. Goyne*, with an oral argument by *Mr. Duniway*.

For respondent there was a brief with oral arguments by *Mr. H. T. Botts* and *Mr. George G. Bingham*.

Opinion by MR. CHIEF JUSTICE BEAN.

1. This is an action to recover a balance of $2,200 alleged to be due plaintiff from defendant on the sale

of 100 shares of the capital stock in the McIntosh &
McNair Company, a corporation. The complaint alleges
that on July 20, 1905, plaintiff sold and transferred to
defendant 100 shares of the capital stock of the corpora-
tion named, for the agreed price of $9,200; that $7,000
thereof was paid in cash, at the time of the sale, and
the remaining $2,200 was to be paid within a reasonable
time thereafter; that such time has elapsed, but defend-
ant has refused to make such payment. The answer
admits the purchase of stock by defendant, but avers
that the purchase price was $7,000, and that it has been
paid in full. The testimony on the trial disclosed that
the contract of sale was oral and made in the office of
the corporation, no one being present at the time but
plaintiff and defendant. Plaintiff testified that the pur-
chase price was $9,200, and that $2,200 thereof remained
unpaid, while defendant positively denied that he was
to pay more than $7,000 for the stock, and testified that
he had paid the agreed price in full. In the course of
his examination he said the book accounts of the corpora-
tion amounted to about $10,000 at the time of the sale,
but that no conversation in reference thereto was had
between himself and plaintiff. He was then asked by
his counsel, what he considered such accounts to be
worth, and, over plaintiff's objections and exception,
answered:

"Well, it is pretty hard to state just exactly. I think
book accounts are generally supposed to be worth about
65 cents on the dollar."

The plaintiff moved to take this answer from the jury
because not responsive to the question. The motion was
overruled, the court remarking that "some book accounts
might be worth more and some less."

2. M. B. Harrison, a witness for defendant, testified
that, prior to the sale of the stock to defendant by plain-
tiff, he had possession thereof to secure a debt due him
from plaintiff, which he had been urging plaintiff to

pay.  He was asked whether plaintiff had made any
statement to him that defendant was unwilling to pay
for the stock what it was worth, and answered that he
did at one time.  On cross-examination it was disclosed
that the statement referred to was made. a month or
more prior to the sale, and plaintiff moved to strike out
the testimony as incompetent and irrelevant, which
motion was denied.

3. For the purpose of impeachment several witnesses
were called by defendant and asked if they were
acquainted with the general reputation of plaintiff, in
the vicinity of Tillamook, for truth, integrity, and
veracity.  They answered that they were, and were then
asked, "What is that reputation?" and replied, "It is bad."
On cross-examination of many of these witnesses, it was
disclosed that their opinion had reference to plaintiff's
business integrity, rather than his reputation for truth
and veracity.  Objection was made to this testimony in
various forms, and exceptions duly saved.  These several
rulings are assigned as errors, and urged as grounds for
the reversal of the judgment.  The defendant claims,
however, that the errors, if any, were harmless, because
the only evidence of the contract sued on was the testi-
mony of plaintiff and defendant, and, since plaintiff's
testimony as to the terms thereof was directly and posi-
tively contradicted by defendant, he has not proved the
case on his part by a preponderance of the evidence.
The bill of exceptions does not purport to contain the
testimony of these witnesses in detail, nor all the evi-
dence given on the trial.  But in any event the question
of fact presented by the testimony was for the jury and
not the court.  The jury are the sole and exclusive judges
of the credibility of the witnesses, and the weight to be
given to their testimony; and, while the burden of proof
was on plaintiff to sustain the averments of his com-
plaint, there is no rule of law forbidding the jury, if
they should believe his testimony, to find a verdict in

his favor, though his testimony is opposed to that of defendant. 3 Wigmore, Evidence, § 2034. This principle is embodied in section 857 of our statute (B. & C. Comp.), and was applied in *Huber* v. *Miller*, 41 Or. 103 (68 Pac. 400).

4. Passing, then, to a consideration of the assignment of errors, we are of the opinion, that, under the circumstances of this case, they are all well taken. The record discloses that the controversy must be determined largely upon the testimony of plaintiff and defendant alone, and therefore the admission of incompetent or irrelevant testimony on behalf of either party was necessarily harmful.

5. Evidence of the assets of the corporation, including the book accounts, was proper as tending to show the value of its capital stock, and thus the probability of the price paid by defendant therefor. But the evidence admitted did not go to the value of the book accounts belonging to the corporation, but to such accounts generally. The circumstances under which it was admitted, and the remarks by the court in reference thereto, probably, if not necessarily, led the jury to believe that the evidence was competent, as tending to show the value of the particular book accounts.

The testimony of the witness Harrison, concerning the statement made to him by plaintiff a month or six weeks before the sale, could have had no bearing on the price defendant actually agreed to pay for the stock. It simply indicated that at that time plaintiff and defendant were unable to agree about the matter, but could not in any way tend to prove the actual agreement.

6. The impeaching questions put to the witnesses called for the purpose of impeaching the plaintiff, called for their opinion as to the general reputation of plaintiff for integrity, as well as truth and veracity, and could have been and probably were answered without reference to the question of veracity at all. A witness may be

impeached by showing that his general reputation for truth is bad, or that his moral character is such as to render him unworthy of belief. Section 852, B. & C. Comp. But he cannot be impeached by showing that his general reputation for integrity is bad, for, as said by Mr. Justice CAMPBELL, in *Leonard* v. *Pope,* 27 Mich. 146: "The question of dishonesty has not been allowed to be considered as an issue upon impeachment. Very likely a man who steals may lie also; but there can be no occasion to enlarge the rule, because he is quite as likely to get such a reputation as he deserves for want of veracity as for want of honest. And, if he has not obtained a bad reputation for truth, it would be a very unreasonable assumption to claim that he ought to have it. The whole doctrine of impeachment, although necessary in many cases, is so often resorted to where the local gossip turns out to be unfounded and malicious, that no good purpose would be subserved by opening the door any wider for the reception of such rumors."

It follows from these views that the judgment of the court below must be reversed, and it is so ordered.

REVERSED.