Argued January 17; reversed March 3; opinion reversed and
petition for rehearing denied June 2, 1936

## COMPTON *v.* HAMMOND LUMBER CO.

(55 P. (2d) 21, 58 P. (2d) 235)

· *Erskine Wood,* of Portland (Wood, Montague, Matthiessen & Rankin, of Portland, on the brief), for appellant.

*William P. Lord,* of Portland, for respondent.

BEAN, J. This is an appeal by defendant from a judgment entered in the circuit court of Multnomah county in favor of plaintiff, based on the verdict of a jury, in the sum of $1,200—$700 as damages and $500 on the maintenance cause. This appeal questions the propriety of the court's rulings permitting the judgment.

The case is stated about as follows: The Hammond Lumber Company is the owner of a steamship named the Covena. On June 10, 1933, the vessel was taking on a part cargo of lumber in the Portland harbor, and plaintiff joined the vessel as second mate for coastwise. The vessel proceeded to Puget Sound, took on some more lumber and then sailed to San Pedro, California, where on June 19 plaintiff entered into articles of seamanship with the owners as second mate for a voyage to Gulf ports and return by way of Panama canal. At the time of joining the ship at Portland, plaintiff was in perfect physical health and the skin disease which he contracted did not manifest itself until shortly before he reached New Orleans. Plaintiff did not go ashore in any port except Everett, Washington, and was ashore there for only a few hours and

he did not intermingle with any people while he was ashore. A virulent itch developed in the pelvic region and between the legs when the boat was about two days out from New Orleans, and shortly afterwards red pimples appeared and commenced spreading. The itch first manifested itself in a small area, from an inch to an inch and a half wide and three inches long on each side, and began slowly spreading. In a period of 15 days it entirely encompassed the pelvic region. It spread to two inches below the navel, and the whole inner portion of the thigh. About 15 days after its first appearance it also broke out on his left ankle. It caused him great discomfort, accompanied by a terrible itching sensation, and he stated that the pimples had water inside them and were more or less painful, and that it was very uncomfortable for him to move about. He attempted to cure it from the ship's medicine chest by the use of iodine, but this did not have any effect. The vessel eventually returned to the Pacific Coast ports and he secured a ticket to the United States Public Health Service physicians at San Francisco for treatment. The itch is a very contagious skin disease. Plaintiff's home was in Portland, Oregon, and he was directed to report to the doctor in charge of the United States Public Health Service there. He reported to Dr. Weir, who was then in charge. The voyage of the vessel terminated on August 18, 1933, and he then became the patient of Dr. Weir and Dr. Smith, who are connected with the United States Public Health Service. These experienced physicians testified that they diagnosed the disease as the itch, partly on account of the statement of plaintiff that he had been treated for the itch in San Francisco at the United States Public Health Service. Plaintiff testified that

he continued to be affected by the itch so that he was unable to perform the duties of a seaman until after the 1st of January, 1934, that the pimples had disappeared from the affected parts before this date, but that the skin was so tender he was unable to work.

The ground of the complaint is that the plaintiff caught the itch due to the defendant corporation's negligence. It is alleged in the complaint:

"That in and by said contract of employment, it was agreed that defendant would furnish reasonably sanitary quarters for plaintiff; that defendant negligently and carelessly and without any care or attention as to whether plaintiff would be injured thereby or not, failed to provide sanitary quarters, and as a result thereof plaintiff contracted sarcoptes scabiei, a contagious skin disease which was due to the negligent failure of defendant to cause a health inspection to be made of a certain member of the crew employed as a cook."

The cause was tried on the evidence introduced on behalf of the plaintiff.

The testimony of plaintiff indicated that the cook employed on the Covena had been afflicted with the contagious itch for some time prior to the joining of the ship, thereby rendering the quarters insanitary. Plaintiff testified that when the Covena was about two days out from San Pedro, as the weather became warmer, the steward stripped off everything except a pair of duck pants and that he noticed that the steward's entire body, up almost to his neck, was covered with the same type of itch which subsequently developed on his own person. The extensive area of the steward's body covered by the itch, the plaintiff states, indicated that it was of long standing. The steward occupied on shipboard the position of a junior officer

and lived in the officer's quarters on board the vessel and used the same lavatories, washbowls and bathing facilities as the officers. Plaintiff asserts that the steward seemed to be a close friend of the master; that the general condition of this vessel was very insanitary, and, contrary to the usual custom on shipboard of frequently changing the linen, the ship was derelict in this respect.

Plaintiff contends that it was apparent to any one that the steward was afflicted with the contagious itch and the fact that he had this itch was known to the master of the vessel before Mr. Compton contracted it; that the steward had charge of the mess rooms, and if he did not do the actual cooking, at least he superintended it and he was given no health test prior to his employment on the Covena, and that the failure to give the steward a health test and the failure of the master to isolate him when it was known he had the itch was negligence on the part of the owner. It is also claimed by plaintiff that the steward himself was negligent in not isolating himself during the voyage and also in taking employment while in this condition. Plaintiff contends that this is negligence of a fellow servant for which the employer is liable. Plaintiff alleges that $100 per month was a reasonable sum to be allowed as maintenance money, and that the cure could not be effected for a period of six months.

Defendant predicates error upon the refusal to direct a verdict for defendant on both causes of action, first, for damages, and second, for maintenance. Defendant assigns as a second assignment of error that the verdict should have been directed upon the first cause of action for the reason that the proof failed to support the allegations, and third, that the court erred

in not directing a verdict for defendant upon the second cause of action for the reasons stated in the first assignment of error, and for other reasons.

Dr. Edward A. Weir, of the United States Health Service of Portland, testified, refreshing his memory from his notes, that Compton came to him for treatment of itch, and further testified:

"A. The term that we give it in our nomenclature is scabiei sarcoptes. It is the ordinary itch.

\* \* \*

A. He seems to be over the worst of it.

Q. Isn't it a fact that you put down that name—what is it?

A. Scabiei sarcoptes.

Q. You would not have put that down until after you make a physical examination, would you?

\* \* \*

A. I hardly think I would."

The doctor testified that the itch is contagious and that it might be acquired by direct contact with another person, or by using the same towel, or something of that kind. Dr. Weir saw plaintiff once. After that he was treated by Dr. Smith. On cross-examination Dr. Weir stated, in regard to his diagnosis of plaintiff:

"A. I took his word for it largely, and it is not always easy to make a diagnosis of itch. \* \* \*

Q. Well, did you diagnose it as itch?

A. I did.

\* \* \*

Q. But because he told you that he had been treated for itch in San Francisco, that is the reason you continued to treat him for itch or give him some ointment, is that right?

A. Partly.

Q. What is the other reason?

A. The other reason is, he told me what he had been taking for it, and judging from that, I thought he had been treated for the itch."

Dr. Kenneth G. Smith, also of the United States Health Service, testified when he saw the plaintiff that there was an inflammation of the skin, but there was no parasite in evidence, and that he had areas on the lower limbs and body that were affected, and on each leg it showed evidence of dermatitis, or an inflammation of the skin. He testified:

"A. I accepted the previous diagnosis that was made.

Q. What was that?

A. Scabies sarcoptic.

Q. That was the diagnosis you treated afterwards?

A. That was the diagnosis that the patient himself stated. And we assumed he was correct in that, because his condition that he had at the time could be accounted for by the scabies."

F. M. Kensmoe, a seaman who joined the vessel Covena at Portland at the time plaintiff shipped and who was acquainted with plaintiff, testified that plaintiff was as physically fit as any man on the boat when he came aboard; that he knew the cook and saw him partially disrobed practically all of the time from San Pedro back to San Pedro; that he wore a pair of dungarees part of the time and an apron part of the time, that his body was uncovered from the waist up, and after he left San Pedro he was broken out and inflamed and sore with reddish pimples on his body.

■ It is contended on behalf of defendant that the proof does not show that plaintiff had the itch. We think the jury was warranted in believing that plaintiff knew he had the itch and that Dr. Weir and Dr. Smith would not be deceived by anything that plaintiff said, so as to make them believe he had the itch, or sarcoptes scabiei, when he was not afflicted with it. And, if the jury believed plaintiff's statement, they could con-

clude that the cook on the Covena had the same kind of skin disease that plaintiff did, namely, the itch, and the circumstances indicated that the plaintiff contracted the itch from the cook.

Dr. J. C. Rinehart, who testified as an expert, stated that sarcoptes scabiei, or itch, is acquired by contact, shaking of hands, towels, bedclothes, or from public toilets; that it is caused by an animal parasite, which locates itself in the tender and protected parts of the body and deposits the eggs along a tunnel that it burrows under the skin, sometimes one-eighth to half an inch in length, and there is resultant intense itching from this burrowing, which causes the afflicted person to scratch and irritate the skin considerably more, resulting in a dermatitis and other skin appearances that might resemble different types of dermatitis. The doctor's testimony does not indicate that the little red lines, after the itch had progressed, would not cause the whole surface to be irritated. We understand the doctor's statement about the depositing of the eggs, and the tunnel that it burrows under the skin one-eighth to one-half an inch in length which results in intense itching, to describe the itch in its first stages, and that after it has spread and the skin has been scratched it would appear differently, and we think the jury so understood the testimony.

The complaint alleges that by the contract of employment it was agreed defendant should furnish reasonably sanitary quarters for plaintiff. While the duty of a master and of a shipowner to furnish care and cure to a seaman in case of illness arises from and is attached to the contractual relation of employment for the breach of which the seaman has under the general maritime law a cause of action *ex contractu,* it is not

inconsistent with allowing him also, at his election, a statutory action *ex delicto* when neglect of the duty results in impairment of body or mind. It is admitted in the answer that plaintiff and defendant entered into articles of seamanship, and we think it is implied in such an agreement, where parties are confined to small quarters, as a ship, that reasonable care and precaution will be taken to keep the quarters sanitary. Where food is to be handled and sleeping quarters are maintained, precautions should be taken against contagious diseases which can be communicated to other members of the crew. There were 30 men in the crew on the Covena. Apparently no physician was on board.

Section 688, 46 U. S. C. A., reads in part as follows:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; * * *. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located. (Mar. 4, 1915, c. 153, § 20, 38 Stat. 1185; June 5, 1920, c. 250, § 33, 41 Stat. 1007.)"

This statute is supplemented by the federal employer's liability act and amendments. See 45 U. S. C. A. Railroads, §§ 51–59; *Wychgel v. States Steamship Co.*, 135 Or. 475, 480 (296 P. 863).

■■ Under the provisions of the Merchant Marine Act and the Federal Employers' Liability Act, by reference incorporated therein, contagious diseases contracted by a seaman through the negligence of the owner, master or fellow employees, constitute negligence subjecting the employer to an action for damages:

*Cortes v. Baltimore Insular Line,* 287 U. S. 367 (53 S. Ct. 173, 776 L. Ed. 368); *Vilter Mfg. Co. v. Industrial Comm.,* 192 Wis. 362 (212 N. W. 641, 57 A. L. R. 627). The obligations of the defendant depend upon the principle of law as interpreted and applied in the federal courts. We are not restricted to the so-called scintilla rule: *New Orleans & N. E. R. Co. v. Harris,* 247 U. S. 367 (38 S. Ct. 535, 62 L. Ed. 1167).

We learn from the opinion in *Cortes v. Baltimore Insular Line,* supra, that an injury suffered by a seaman in the course of his employment as the result of failure of a master of a ship to furnish him care or cure, when stricken by pneumonia, is a "personal injury" from "negligence", within the purview of section 33 of the Merchant Marine Act, supplemented by the Federal Employers' Liability Act, for which that section gives a right of action, by a seaman, if living, or by his personal representative, if the injury results in death, and the fact that the duty of a master and of a ship owner to furnish care and cure to a seaman in case of illness is a duty arising from and attached to the contractual relation of employment, for the breach of which the seaman has, under the general maritime law, a cause of action *ex contractu,* is not inconsistent with allowing him also, at his election, a statutory action *ex delicto* when neglect of the duty results in impairment of body or mind, and that section 33 of the Merchant Marine Act should be liberally construed in aid of its purpose to protect seamen, and those dependent on their earnings. And when a duty imposed by law for the benefit of the seaman and for the promotion of his health or safety has been neglected, to the damage of his person, his remedy, under section 33 of the Merchant Marine Act, is the same

as though a like duty had been imposed by law upon carriers by rail.

*Penker v. Dollar S. S. Line, Inc.*, 8 Fed. Supp. 390, is a case something like the one at bar. Penker entered upon the voyage as a well man. As a result of coming in contact with towels, food, or other articles handled by the mess boy affected with the disease, he contracted trachoma of the left eye, which, after the termination of the voyage produced such a condition of the eye that he was unable to see with it, so as to necessitate treatment and an operation. He was allowed $2,100 for his maintenance and cure, for a reasonable time. See *Dushane v. Benedict*, 120 U. S. 630 (7 S. Ct. 696, 30 L. Ed. 810), which is of interest upon the question of contagion.

In *Voshall v. Northern Pacific Term. Co.*, 116 Or. 237 (240 P. 891), the testimony indicated that the man had inhaled fumes and become poisoned by the use of a metal polish. It was claimed that the question as to whether Voshall had contracted the disease as the result of the use of the polish was highly speculative. This court sustained the verdict of the jury, holding it was a question of fact for the jury to determine. See also *Reed v. Rosenthal*, 129 Or. 203 (276 P. 684, 63 A. L. R. 1071).

We have examined all of the authorities cited by defendant, but do not deem it necessary to discuss them. There was no error of the trial court in denying the motions for a directed verdict.

Error is predicated upon the court permitting the plaintiff, in answer to counsel's question, to state that "a reasonable allowance" for subsistence would be "about $3.50 a day". The question propounded to

plaintiff as a witness was, "Do you know what is a reasonable allowance for subsistence?" Upon objection and argument pro and con it was explained by counsel for plaintiff that it was the same, "just as what might be the reasonable charge for medical service". Counsel for defendant, in referring to the meaning of the word "subsistence", said in part: "all it means is when a seaman is disabled from work on account of something happening on the voyage and he can't go to work again and he is laid up he is entitled to a reasonable amount for his board and keep". It appears to us that the question refers to the reasonable value of maintenance, that is, food and keep. The question, it seems, differs from that of damages. We fail to see that the jury would be required to know the reasonable value of "maintenance and cure" without testimony in regard thereto.

 It is well settled in this state that a witness can not be permitted to give his opinion of the amount of damages resulting from the act or omission complained of: *Smith v. Pallay,* 130 Or. 282, 288 (279 P. 279). There are cases, such as *Montgomery v. Somers,* 50 Or. 259 (90 P. 674), where, notwithstanding such error, the judgment was upheld for the reason that it was apparent from the small amount of the verdict that the error was harmless. In the present case it seems to be more a matter of phraseology as to the reasonable value, than anything else. We do not think it is reversible error.

We read in Emma Marie-Magellan, 1933 American Maritime Cases, 432, at pages 433 and 440:

"The right of a seaman who falls sick or is injured in the service of a vessel to 'maintenance and cure', so called, at the expense of the vessel and her owner

is an ancient provision of the maritime law, found in the maritime codes, and includes treatment on shore as well as treatment on board the vessel. * * *

"The duty to provide a sick or injured seaman with maintenance and cure is an implied obligation of the shipping contract. Harden v. Gordon, 2 Mason 547; Atlantic, as quoted supra, (Abbotts Adm. Rep. 455, 480). In Curtis on Merchant Seamen, published in 1841, the author said, page 19: 'Although the articles are wholly silent upon such points, law and reason will imply certain engagements on the part of the master and owners to the mariners which are equally as imperative as those expressed in writing.' Among them he included the duty to provide maintenance and cure, and the duty has been described in a recent decision of the Supreme Court, as 'implied in law as a contractual obligation arising out of the nature of the employment.' Pacific Steamship Co. v. Peterson, 278 U. S. 130, 135, 1928 A. M. C. 1932. See also Cresci v. Standard Fisheries, 1925 A. M. C. 1026, 7 F. (2d) 378; Hughes Admiralty, 204."

We learn from the same opinion that while the rule undoubtedly is subject to variations, "when a course of medical treatment, necessary and appropriate to the cure of a seaman, has been commenced, and is in a course of favorable termination, there would be an impressive propriety in holding the ship chargeable with its completion, at least for a reasonable time after the voyage is ended or the mariner is at home".

We quote from page 441 of the same opinion:

"The obligation is peculiar to the maritime law, and arose out of the necessity that a seaman disabled by sickness or injury on a voyage, and unable to provide for himself, should be cared for by the vessel. * * * It is applied whether the seaman's disability is caused by accident or negligence, and even if by his own negligence, the only limitations being that the disability occur while he is in the service of the vessel and

not as a result of wilfull misconduct on his part. Osceola, 189 U. S. 158; * * *." Citing other authorities. See also The James E. Ferris, 1 Fed. Supp. 1018.

■ It is argued that the articles of seamanship, which were not produced as evidence, might have contained a provision absolving the defendant from liability in the premises. We think this would be a matter of defense which should have been pleaded by defendant.

■ In regard to the duty of the owner of the vessel, the contract of employment, which it is agreed was signed by the plaintiff and the master, would be governed by the maritime law, whether it is written in the contract or not; in other words, the duty of the owner of the vessel is established by law.

■ Defendant claims there was no evidence in the case as to what the contract of employment was; therefore, it was error for the court to instruct the jury regarding the duty of the master of the vessel under the terms of the contract. As stated, the duties of the owner of the vessel, as prescribed by law, being impliedly written into the contract, it would amount to the same thing as though the duties were under the written terms of the contract. The court instructed that it is the duty of the owner of the vessel to exercise reasonable and ordinary care in regard to a contagious disease, having in mind the conditions under which the defendant's vessel was making the voyage, and whether the defendant, acting through its master, knew, or in the exercise of reasonable care should have known, that the cook was afflicted with said disease, if he was so afflicted. Also the court instructed the jury that if defendant did perform its contract of employment with the plaintiff in a reasonably prudent manner, and was

not negligent, then the jury should find a verdict for defendant.

We think that the instructions were fair directions in regard to the issue and that there was no reversible error on account of the language of these instructions.

The defendant urges that it was error for the court to instruct the jury, at plaintiff's request, in effect, as follows:

"* * * I instruct you that plaintiff, being employed by defendant as a seaman, if he falls sick during the course of the voyage and said sickness continues after the completion of the voyage of the vessel, and after plaintiff has left the employment of defendant, then plaintiff is entitled to recover for maintenance or subsistence until a cure has been effected or plaintiff's ailments have become stationary. * * * It is for you to say, under all of the evidence, if plaintiff was sick after he completed his voyage, and the duration of such sickness, and it is likewise for you to say, under the evidence, what is a reasonable amount to be allowed plaintiff by way of compensation for any sickness or ailment which he sustained, if he sustained any, after the completion of the voyage."

Counsel for defendant objected and reserved an exception to the giving of the instruction on the ground that in stating the ship owner's duty to provide seamen with maintenance the court omitted to state the qualifications or disability and need of maintenance. Defendant requested an instruction in regard to maintenance and cure in plain language: "It is strictly limited to the time he is actually disabled from work."

■ There is a sharp controversy in regard to maintenance and cure. Plaintiff was treated at the United States Marine Hospital and does not appear to have been required to expend anything for medical attend-

ance, so that his claim is strictly for maintenance. It is shown by the testimony that during the time for which he claims $100 per month, he went to the hospital and had an operation for appendicitis which would disable him for at least one month, and the physicians seemed to think it would be for a longer time. The testimony of the doctors tended to show that plaintiff was not disabled from work on account of the itch all of the time for which he claims, and we think the instruction upon this point, in substance like the one requested by defendant, should have been given and that the instruction above quoted is erroneous. This error necessitates a reversal of the judgment and remanding of the cause for a new trial.

It is so ordered.

CAMPBELL, C. J., and BAILEY, J., concur.

RAND, J., concurs in the result.

---

Former opinion reversed petition for rehearing denied
June 2, 1936

### ON PETITION FOR REHEARING
(58 P. (2d) 235)

BEAN, J. Respondent has filed a petition for rehearing which raises a question in regard to the instructions of the trial court. In our former opinion we found no reversible error in regard to the first cause of action for negligence. In regard to the second cause of action, for maintenance, we found error in the instructions to the jury, in substance, in stating that it was the shipowner's duty to provide the seamen with "maintenance or subsistence until a cure has been effected or plaintiff's ailments have become stationary * * * ."

■ Our attention is now called to other instructions which strictly limit the maintenance to the time the seaman is actually disabled from work and which we think cured the apparent error and plainly submitted the question to the jury. We quote from the instructions given to the jury:

"In the second cause of action stated in the complaint the plaintiff claims $600.00 which he designates as maintenance at the rate of $100.00 per month. I instruct you that maintenance is a sum which, under the law, shipowners are sometimes called upon to pay to seamen who become sick or injured in the service of the ship. But, since this is an allowance made only for the purpose of affording a sailor his keep while he is recovering from an illness or injury, *it is strictly limited to the time he is actually disabled from work,* and is also strictly limited to the reasonable expenditures he makes or incurs for food and lodging during that period. [Italics ours.]

"In this particular case you have heard the testimony of Compton and the doctors as to whether he was disabled at all or not, or whether he was able to go on working, and you have heard the testimony that he was operated on for appendicitis in October and stayed in the hospital some little time therefor, and all the other testimony in the case, which I do not attempt to recall or specify, but from all of this you are to decide whether he was disabled from work, and if he was disabled from work, how long a time he was disabled, and how long a time he was put to the necessity of keeping himself as a result of this itch, provided you find he had the itch. If you find that he was, as a result thereof, disabled any time at all, then you must ask yourselves what evidence is there of any charges or expenditures that he made or incurred for his reasonable board and lodging. If he has proved any, then if you think they are reasonable you can allow them. But you cannot allow them beyond what you think is reasonable, nor beyond the actual proof of what he has spent or incurred

for his keep during the period in which you may think he was actually disabled. As I said before, this is a bounty accorded by the law to the seamen, and is not a thing to be abused.''

■ There is a correction to be made in the computation of time plaintiff was unable to work on account of the illness, as contained in the judgment. Compton's voyage ended on August 19, 1933. The evidence shows that on account of the ailment he was unable to work until about January 1, 1934, but during that time, on account of a major operation which was performed upon him, he was disabled from work for about six weeks. The jury's verdict on this was as follows: ''* * * and on plaintiff's second cause of action we find our verdict for the plaintiff in the sum of $500.'' We think the testimony supports the verdict and judgment for maintenance in the sum of $300, and no more, which is a reasonable amount for plaintiff's maintenance. The judgment for the second cause of action will be modified accordingly.

Our former opinion will be reversed and changed and a judgment will be rendered in favor of plaintiff and against the defendant in the sum of $700 on the first cause of action, for damages, and $300 on the second cause of action, for maintenance.

Neither party will recover costs in this court.

The petition for rehearing will be denied.

RAND, J., dissents.