Argued June 24; reversed July 14; rehearing denied September 10, 1936

McCALL *v.* INTER HARBOR NAVIGATION CO.

(59 P. (2d) 697)

*George S. Shepherd* and *Harold W. Peterson,* both of Portland, for appellant.

*Wallace McCamant,* of Portland (McCamant, Thompson & King, of Portland, on the brief), for respondent.

RAND, J. This is an action to recover for a personal injury claimed to have been sustained by plaintiff while he was employed by the Inter Harbor Navigation Company and serving on the Admiral Farragut, a vessel engaged in coastwise trade and plying between Portland, Oregon, and San Diego, California. He served continuously on this vessel, first as an ordinary seaman, later as an able seaman, and finally as a quartermaster, from October 12, 1931, to July 30, 1932, when he terminated his employment.

On September 8, 1932, or 40 days after he had ceased working, the plaintiff became ill and consulted a physician, who, on September 12, 1932, after completing his examination, diagnosed plaintiff's disease as chronic, active pulmonary tuberculosis. Two days thereafter, the plaintiff was admitted to the United States Marine Hospital at Port Townsend, where he remained under treatment until transferred to the United States Marine Hospital at Seattle, from which he was discharged on June 10, 1934.

On July 28, 1934, plaintiff brought this action, seeking to recover the damage sustained by his illness which was charged to have been caused by the negligent failure of the owner of the vessel to provide him with reasonably safe and suitable quarters in which to sleep, which, the complaint alleged, was the cause of said illness. In support of this allegation, the plaintiff offered evidence tending to show that, due to the faulty construction of the ship and want of repairs, the sleeping quarters in which the plaintiff and other members of the crew were compelled to sleep during the entire term of plaintiff's employment were not properly ventilated or properly heated, were always damp and wet and were often flooded with sea water, sometimes to a depth of one foot, without any drainage being provided or other means of removing the water except that of bailing by hand; that the port-holes leaked; that the steam pipes passing through said quarters leaked both water and steam, and that, by reason thereof, the plaintiff was compelled during most of the time to sleep in wet blankets.

According to the testimony of two of the medical witnesses, a person living under those conditions for a considerable period of time might, due to an impairment of his health caused thereby, develop tuberculosis

in an active or secondary form such as that from which the plaintiff suffered. Their evidence tended to show that tuberculosis is a germ disease caused by an infection, the germ either being inhaled or taken into the body through food or in some other manner, which first sets up an inactive, primary condition, and, in most cases, never develops into the secondary or active stage. But when the health of a person so afflicted is impaired or his resistance to the disease is lessened by any cause, the disease may become active.

According to all the testimony, when a person is found to be suffering from a chronic, active pulmonary tuberculosis, such as the plaintiff was found to be on September 12, 1932, unless he has been under observation prior to that time, it is impossible to say when the change from the inactive, primary stage to the active, secondary stage took place. As an ordinary rule, the evidence shows, the development of the disease from its inactive form to the active stage requires several months. One of the doctors testified that it might occur in 60 days and that the length of time would depend upon the susceptibility of the person to the disease.

At the close of all the testimony, the defendant moved for a directed verdict, basing its motion on three principal grounds, namely: (1) that plaintiff's illness was an aggravation of a former infirmity and it, not being pleaded as such, was not actionable; (2) that plaintiff had failed to show that his cause of action accrued within two years prior to the commencement of the action; and (3) that plaintiff had assumed the risk. The trial court denied the motion on the first ground, sustained it on the second, and made no ruling upon the question of whether the plaintiff had assumed the risk, and plaintiff has appealed.

■ Assumption of risk is not a defense to a suit brought by a seaman under the Jones Act, 41 Stat. 1007, 46 U. S. C. A., section 688, for negligent failure of the master to provide safe appliances or a safe place in which to work: *The "Arizona", et al v. Anelich,* 298 U. S. 110 (56 S. Ct. 707, 80 L. Ed. —), and *Beadle v. Spencer,* 298 U. S. 124 (56 S. Ct. 712, 80 L. Ed. —), both decided April 27, 1936. And this rule applies "when the injury occurs upon a vessel in port as when at sea, although the common law may apply a different rule to an injury similarly inflicted on the wharf to which the vessel is moored": *Beadle v. Spencer,* supra. In view of these decisions, which were rendered after defendant's motion for a directed verdict was° made and passed upon, the defendant now concedes that its motion for a directed verdict, in so far as it is based upon the question of assumption of risk, is no longer tenable.

This action was brought under section 33 of the Merchant Marine Act of 1920, commonly known as the Jones Act, which provides:

"* * * any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable."

Section 1 of the federal employers' liability act, 35 Stat. 65, 45 U. S. C. A., section 51, thus incorporated in the Jones Act by reference, gives a right of recovery

for the injury or death of an employee of a common carrier by rail, in interstate or foreign commerce, "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its * * * appliances, machinery * * * or other equipment".

Section 6 of the federal employers' liability act, 45 U. S. C. A., section 56, which is likewise incorporated in the Jones Act by reference, provides that:

"No action shall be maintained under this chapter unless commenced within two years from the day the cause of action accrued."

It was held in *Cortes v. Baltimore Insular Line, Inc.,* 287 U. S. 367 (53 S. Ct. 173, 77 L. Ed. 368), that an injury suffered by a seaman in the course of his employment as the result of the failure of the master of the ship to furnish him care or cure when stricken by pneumonia is a personal injury from negligence within the purview of section 33 of the Merchant Marine Act, commonly known as the Jones Act, as supplemented by the federal employers' liability act. In that case, in defining the rights of a seaman to maintain an action under the Jones Act, the court, among other things, said:

"If the default of the vessel and its officers has impaired his bodily or mental health, the damage to mind or body is none the less a personal injury because he may be free at his election to plead it in a different count."

In *Compton v. Hammond Lumber Co.,* 153 Or. 546 (55 P. (2d) 21), this court speaking through Mr. Justice BEAN, said:

"Under the provisions of the Merchant Marine Act and the federal employers' liability act, by reference incorporated therein, contagious diseases contracted by a seaman through the negligence of the owner, master,

or fellow employees constitute negligence subjecting the employer to an action for damages. Cortes v. Baltimore Insular Line, 287 U. S. 367, 53 S. Ct. 173, 77 L. Ed. 368; Vilter Mfg. Co. v. Industrial Comm., 192 Wis. 362, 212 N. W. 641, 57 A. L. R. 627.''

■ From this it follows that, if plaintiff's disease was caused by the negligent failure of the owner of the vessel to provide him with a safe place to work and if the action was brought within two years after the cause of action accrued, then plaintiff is entitled to recover for the consequent injury, it being a personal injury within the purview of the federal acts as held in the cases last cited.

■ That the plaintiff, while occupying the sleeping quarters provided for him on board ship, was acting in the course of his employment and performing services incidental to his employment and was thereby within the rule that it was the duty of the master of the ship to provide him with a reasonably safe place to work seems clear. The principle applicable to that situation was stated by Lord Atkinson in *Charles R. Davidson and Company v. M'Robb*, A. C. 1918, 304, 327, as follows:

"* * * The words 'in course of his employment' mean, I think, while the workman is doing something he is employed to do. In the case of a sailor who lives on board his ship, or an indoor servant who lives in his master's house, these words would of course cover and include things necessarily incidental to his service there—such as taking his meals, sleeping, resting, etc. In satisfying these demands of nature the sailor is as truly doing something within the course of his employment as he would be in keeping a look-out or going aloft.''

This brings us to the main question in the case, the one on which the trial court acted, namely: Was

this action commenced within two years from the day on which the cause of action accrued? If not commenced within said time, the right of action itself is lost under the provisions of the Jones Act, which, in express terms, if not complied with bars not merely the remedy but the right itself.

■■ In passing upon this question, we must remember that all questions of fact are to be determined by the jury and that the trial court is not authorized to determine the probabilities or improbabilities of the evidence, nor the credibility of witnesses, nor to draw any inference of fact unless the evidence is such that all reasonable minds would draw the same inference. Those are matters which, under our law, are left entirely to the determination of the jury. We must also remember that absolute certainty of a fact in issue is never required in any case, either civil or criminal, that in civil cases the jury passes upon the preponderance of the evidence and in criminal cases upon evidence which satisfies the minds of the jurors beyond a reasonable doubt. In neither case is absolute certainty required. We must also remember that, upon a motion for a directed verdict, the motion admits the truth of plaintiff's evidence and of every inference of fact that can reasonably and legitimately be drawn from the evidence and the evidence itself must be interpreted in the light most favorable to the plaintiff: *Keys v. Griffith,* 153 Or. 190, (55 P. (2d) 15).

In the case of *Vilter Mfg. Co. v. Industrial Comm.,* 192 Wis. 362 (212 N. W. 641, 57 A. L. R. 267), the respondent's deceased husband, who had been an erecting engineer employed by appellant to do some work at a hospital where certain patients were being treated for smallpox contracted smallpox from which he died. The Industrial Commission found that the deceased had con-

tracted smallpox while so employed and made an award in favor of his widow. Upon an appeal from a judgment affirming the award, it was contended that there was no evidence to sustain the finding because the decedent might have contracted the disease either at the hospital or on street-cars, trains or elsewhere. In affirming the judgment, the court said:

"Since we are not called upon to weigh the probabilities for or against the finding of the Commission, but only to ascertain whether or not there is competent testimony to sustain it, no effort has been made to set out all the details of the evidence for or against the Commission's finding. The ultimate question we have to answer is, Can a finding rest upon a preponderance of probabilities? The assertion is made by plaintiffs that the finding is only a guess, and that it must amount to a reasonable certainty. That a finding or verdict must amount to a reasonable certainty is the law. That brings us to the question stated somewhat differently, Can a finding to a reasonable certainty be based upon evidence which shows only a preponderance of probabilities?

"Fortunately our court has dealt with this question several times. In Hallum v. Omro, 122 Wis. 337, 99 N. W. 1051, the court says: 'True there can be no recovery, legitimately, for permanent impairment in a case like this [action for personal injury] in the absence of competent evidence warranting a conclusion, with reasonable certainty, that such impairment will exist as a result of the accident; but it is not necessary that opinion evidence should be confined to that high degree of certainty. Experts may properly testify to the mere probabilities of the case.' * * *

"And again it says: 'An examination of the cases cited will show that 'probable', 'likely', and 'liable' have been treated as synonymous, each dealing with reasonable probability, not with possibility, and that what may probably or is likely or liable to be the future result of a personal injury is competent evidence to prove what is reasonably certain in the matter.

\* \* \* An interrogatory as to what the probabilities are, or what is likely or liable to be the result as regards permanency of the injury, cannot be condemned as speculative or conjectural. This does not militate at all against the doctrine that the ultimate vital fact to be determined is what is reasonably certain to be the result. That is for the jury to determine from all the evidence bearing on the question, including the opinion evidence as to what is probable, likely, or liable to be the case.' "

Applying these principles to the facts of this case, we have this situation: The defendant could not be liable to the plaintiff, under the Jones Act, for any wrong it may have committed prior to July 28, 1932, which was two years prior to the day on which this action was commenced. Plaintiff terminated his services on July 30, 1932. Hence, if defendant was liable at all, it was for some wrong committed during the last three days of plaintiff's employment. There was evidence, however, which would have warranted the jury in finding that the plaintiff's illness was caused by defendant's negligent failure to furnish plaintiff with a safe place in which to work during his entire term of employment, but there was no evidence upon what particular day the injury occurred.

■ Under those circumstances, how could the trial judge say, as a matter of law, that, if plaintiff's illness was caused by defendant's negligent acts it must have been caused before and could not have been caused during the last three days of plaintiff's employment? This was a question for the triers of the fact to determine and not for the trial court. It was error, therefore, upon that question for the court to direct a verdict in favor of the defendant.

■ The evidence tended to show that, when plaintiff commenced working for the defendant, he was and had

been perfectly well and that, shortly after he completed the work, he was stricken with tuberculosis. Under these circumstances, we find no merit in defendant's contention that, in order for plaintiff to recover in this action, it was necessary for him to allege in his complaint that his illness was an aggravation of a pre-existing disease. The reason for the application of the rule contended for could only exist when its application was necessary to prevent the plaintiff from obtaining compensation from the defendant for an injury for which the defendant was not liable.

■ Nor do we find any merit in the contention that the condition of the record before us precludes us from passing upon these questions. It is a rule of almost universal application that, before this court can pass upon a ruling on a motion for nonsuit or for a directed verdict, the record produced must include the entire testimony. The reason for the rule is obvious, for, in the absence of such a record, there would be no way of determining whether the motion was correctly passed upon or not and, since error will not be presumed, it must be made affirmatively to appear. In this case, however, the trial court has certified that the only evidence in the case bearing upon any of these questions is contained in the bill of exceptions certified to by him. This brings the case within the one exception to the general rule which exception was recognized and approved by this court in *Goodale Lumber Co. v. Shaw,* 41 Or. 544 (69 P. 546), and *Mitchell v. Coach,* 83 Or. 45 (153 P. 478, 162 P. 1058).

For these reasons, the judgment is reversed and the cause will be remanded for such further proceedings as are not inconsistent herewith.

KELLY, BEAN, and BAILEY, JJ., concur.