Argued March 30; affirmed April 20; rehearing denied
June 2, 1948

# HILLEND v. KOLTSCH AND FRINK

192 P. (2d) 274.
193 P. (2d) 927.

*Glenn R. Jack,* of Oregon City, argued the cause for appellant. On the brief were Butler & Jack, of Oregon City.

*Robert W. Gilley,* of Portland, argued the cause for respondent. On the brief were Gilley, Humphreys & Sercombe, of Portland.

Before ROSSMAN, Chief Justice, and LUSK, BELT, KELLY, BAILEY and BRAND, Justices.

KELLY, J.

On the 10th day of February, 1946, a flight was attempted from Portland, Oregon, to Wickenburg, Arizona, in an airplane owned by plaintiff. Defendant Frink was the pilot. The occupants of the plane, other than the pilot, were defendant Koltsch, Claude O'Dell,

Clyde Winchester and the wife of the pilot. The plane landed upon the ice formed upon Klamath Lake about 10 miles from Klamath Falls, Oregon, and was badly damaged.

Plaintiff instituted this action to recover for said damage to his plane. Plaintiff contends that during the attempted trip the plane was in the exclusive control of the defendant Koltsch.

Defendant Frink was not served with summons and made no appearance as a party although his deposition was taken.

Defendant Koltsch, in his answer, alleges that, upon the date above named, he rented as a member of a party the airplane in suit for the purpose of making the trip aforesaid and plaintiff agreed that defendant and the others of his party could rent said airplane under the condition that plaintiff name the pilot; that plaintiff selected said pilot, gave him instructions and directions; and that said pilot in said flight was the agent of the plaintiff, was acting under the directions and control of the plaintiff and was never at any time under the directions of said defendant Koltsch, nor was said pilot the agent of said defendant or under his control.

The appearing defendant sought by his second further and separate answer to recover $250, from plaintiff, being the amount paid by him to plaintiff as rental for said plane.

The case was tried to a jury and the jury returned a verdict against defendant Koltsch and in favor of plaintiff in the sum of $5,750.

The crucial question here is, whether there is substantial evidence in the record in support of plaintiff's contention that the agreement that plaintiff made concerning the use of said plane was a contract of bail-

ment by the terms of which defendant Koltsch became a bailee of said plane with the right to control the course to be taken by the pilot; in other words, that the pilot was the agent of defendant Koltsch.

The testimony is conflicting, but we think that there was substantial testimony supporting plaintiff's contention as to the character and effect of the agreement pursuant to which the attempted flight was undertaken.

The record contains testimony to the effect that Mr. Winchester, acting under instructions from defendant Koltsch, first interviewed Mr. James K. Sproat, who was manager for the North Pacific Aero Service at the Troutdale airport where the plaintiff kept his plane. The avowed purpose of the interview was to obtain for defendant Koltsch information as to the price that would be charged for the trip to Wickenburg, Arizona. The price then quoted was $800.00.

There is testimony to the effect that Mr. Winchester, at the instance of defendant Koltsch, then went directly to plaintiff and offered $250.00 which plaintiff finally accepted. Plaintiff testified his acceptance was with the understanding that Koltsch would supply his own pilot, gas and oil. During this conversation Mr. Winchester suggested Mr. Frink as a pilot and the plaintiff approved the suggestion. Defendant testified that he called Mr. Frink.

Plaintiff testified that between the time he talked with Mr. Winchester and the time just prior to the takeoff, he, plaintiff did not talk to Mr. Frink and that Mr. Frink was not acting for him the plaintiff in the flight.

"  *  *  * there is no rule of law forbidding the jury, if they should believe his testimony, to find

a verdict in his favor, though his testimony is opposed to that of defendant." McIntosh v. McNair, 53 Or. 87, 90-91, 99 P. 74; citing Huber v. Miller, 41 Or. 103, 68 P. 400; see also Johnson v. Hoffman, et al, 132 Or. 46, 284 P. 567.

Mr. Frink testified that he did not know that plaintiff owned the plane and he also indicated by his testimony that he accepted the employment in reliance, at least in part, upon the fact that defendant Koltsch in the past had paid him well; it appearing from the testimony that Frink had been employed previously as a pilot by Koltsch.

██ In support of his first assignment of error, to the effect that the trial court erred in refusing to grant defendant Koltsch's motion for a directed verdict, defendant Koltsch cites *Cooper v. North Coast Power Co., et al,* 117 Or. 652, 244 P. 665, 245 P. 317.

In that case, this court, speaking through the late Mr. Justice BROWN, said:

" * * * The direction of a verdict, or the granting of a motion for nonsuit, takes the place of a demurrer to the evidence under the ancient common-law rules:" (citing authorities.) "In the disposition of this question, we must adhere to the rule that the court does not weigh the evidence nor determine the credibility of the witnesses. For the purpose of the motion, the witnesses are entirely credible, and speak nothing but the truth. Futhermore, in considering this motion, every reasonable intendment and every fair and legitimate inference which can arise from the testimony of record must be made in favor of plaintiff."

Defendant Koltsch also cites *McCall v. Inter Harbor Navigation Co.,* 154 Or. 252, 59 P. 2d 697, in which case, speaking through the late Mr. Justice RAND, we said:

" * * * * * We must also remember that, upon a

motion for a directed verdict, the motion admits the truth of plaintiff's evidence and of every inference of fact that can reasonably and legitimately be drawn from the evidence and the evidence itself must be interpreted in the light most favorable to the plaintiff: Keys v. Griffith, 153 Or. 190, 55 P. 2d 15.''

In support of his first assignment of error, defendant Koltsch also cites *Collander v. Brown—Stone v. Brown,* 178 P. 2d 922, 44 Adv. Sheets 389. This is a case wherein the question was whether the testimony tended to support an allegation of gross negligence. We held that only ordinary negligence had been shown. In the case at bar, the question of alleged gross negligence is not involved.

Citation made by defendant Koltsch to Vol. 99 A. L. R. p. 184, refers only to the case of *Bird, Admr. v. Louer,* 272 Ill. App. 522. That is a case where the owner of the plane upon which plaitiff's decedent was riding, when she met her death by reason of a collision with another plane, had in his employment a pilot. Plaintiff, as administrator, instituted the action against the owner of the plane to recover for the allegedly wrongful death of his decedent caused by the negligence of defendant's pilot. The case was tried to the court without a jury and the trial court, which was the superior court of Cook County, found for the defendant and dismissed the case. The Illinois Appellate Court' held that the record was such that it could not say that the finding of the trial court in favor of defendant was clearly and manifestly against the evidence and therefore the judgment of the trial court was affirmed.

It will be noted that the relation of the parties plaintiff and defendant in the Illinois case was just the reverse of the relation of the parties in the instant

case. In the Illinois case, the plaintiff was the personal representative of his decedent for whose death a recovery was sought against the owner of the plane and the fact that the pilot was employed by defendant was not disputed, while in the instant case the plaintiff was the owner of the plane and one of the contested issues is, whether the pilot was in the employ of the defendant, as claimed by plaintiff, or in the employ of plaintiff as claimed by defendant.

In the Illinois case, the appellate court could not say that there was no evidence to support the finding of the trial judge. In the case at bar, we cannot say that there was no substantial evidence to support the verdict of the jury.

■ Defendant Koltsch's purported assignment of error number two does not refer to any ruling or other act of the trial court or charge that the trial court erred in any way.

We quote this purported assignment number two:

"Bailment is a contract and cannot be altered, modified or changed without the consent of all parties. If a contract for bailment ever existed, it was cancelled by the plaintiff giving the directions and exercising control over the pilot."

We also quote said defendant's purported assignment number four:

"Statutory instructions are a requisite and must be given by the court whenever instructing a jury."

The rule of this court pertaining to assignment of error provides that each assignment of error must be separately stated under an appropriate heading. Each such assignment should be clearly and succinctly stated.

The following arrangement and wording, as far as applicable, together with reference to page of Bill of Exceptions, are required:

The court erred in failing to give the following requested instruction: (Set out instruction haec verba), or

The court erred in giving the following instruction: (Set out instruction and objection made thereto, both haec verba). Rules of the Supreme Court, Vol. 9, O. C. L. A., pp. 328, 329, Rule 13, Subdivision 3.

■ Said defendant's assignment of error number three does not conform to the above mentioned rule in that it does not set out the objection, if any, made to the instruction thus criticised, nor does it refer to the page of the Bill of Exceptions where the criticised instruction may be found. From the printed argument in defendant's brief, it appears that said assignment number three refers to the instruction to which defendant was allowed an exception at the conclusion of the court's instructions to the jury.

Both in his oral argument and in his brief defendant asserts that "the instruction complained of was given by the court in such a manner as to give the jury an entirely misleading viewpoint upon the essentials necessary to establish plaintiff's case."

This court is unable to determine the manner in which the trial court delivered that instruction, and we think that defendant waived his exception thereto by failing to incorporate in his brief a tenable objection thereto.

■ As stated, the purported assignment of error number two does not indicate any course taken by the learned trial judge, but merely offers two statements, one as to the necessity of consent on the part both of

the bailor and the bailee in order to alter, modify or change a contract of bailment; and the other to the effect that the contract of bailment in suit was cancelled by the plaintiff giving directions and exercising control over the pilot.

The trial judge gave the following instruction:

"The burden of proof in this case rests upon the plaintiff herein to prove that at the time he delivered the airplane to the defendants herein he permitted the defendants to have the exclusive possession and control of said airplane, that the defendants agreed to return the airplane to the plaintiff in good condition, and to prove his damages, and if the plaintiff fails to do so he cannot prevail."

There is no indication in the above instruction nor in any other part of the record that the trial court intimated or stated that one party to a contract of bailment could alter the contract of bailment without the assent of the other.

The jury heard the testimony of the occurrence when the assent of plaintiff was given to the pilot to "take-off". It is obvious that the jury found that there was a contract of bailment as claimed by plaintiff and that this circumstance was not considered by the jury as a change in the terms of the bailment or a cancellation thereof.

■ As to the statement in defendant Koltsch's argument following his purported assignment of error number four, to the effect that the trial court omitted part of the statutory instructions, an examination of the Bill of Exceptions discloses that at the conclusion of the court's instruction to the jury, the trial judge first heard and allowed the exceptions of plaintiff's

counsel and then addressed counsel for defendant Koltsch thus:

"Mr. Jack, do you have any exceptions?"

To this Mr. Jack replied:

"I have just one, your Honor: that is, one in addition to what the Court allowed us. I wish to except in that connection to the court's instruction regarding the phase of damages where the Court, in substance, said it was a presumption and that it would be the defendant's responsibility, and particularly for the reason that the statement was made without regard to the explanation that this was contingent upon the establishment of the bailment by a preponderance of the evidence."

To this the trial court said:

"You mean this instruction, 'On the proof of the delivery of the airplane in good condition?'

That is right."

The one single exception claimed by said defendant's attorney was then allowed by the court.

It is obvious that no notice was given to the trial court that defendant desired the omitted statutory instructions to be given and no request was made to that effect. If such notice or request had been interposed, we have no doubt that it would have been heeded by the learned and experienced trial judge.

In view of the foregoing facts, we think the omission to give some of the statutory instructions did not afford sufficient ground for this assignment of error; and that it does not require a reversal of the judgment rendered by the trial court.

We find no reversible error and therefore the judgment of the circuit court is affirmed.

Submitted on petition for rehearing, May 18, 1948.

DENIED.

KELLY, J.

Defendant has filed a petition for rehearing in support of which two grounds are urged: (1) That there is no evidence of negligence on the part of defendant, and that, as a matter of fact, defendant was free therefrom; and (2), that apparently this case was decided on the basis that the law raises a presumption in favor of the plaintiff by showing delivery to the defendant in good condition and a return in bad condition.

As to the first ground, namely, that there is no testimony tending to prove negligence on the part of defendant, it is shown that the landing of the plane was made upon a lake. If it had landed on the ground, obviously, the damage it sustained by sinking in water would not have occurred. Moreover, Mr. Clyde Winchester, who was an occupant of the plane on the trip in suit, was called as a witness by defendant and testified that at the time of the landing the bank of the lake was probably around from five, maybe three feet above the water's edge; and Mr. Winchester further testified that he believed that it would have been possible to have towed that plane out and towed it up on dry land at that point.

Mr. Winchester was cross-examined by plaintiff's attorney upon the method of saving the plane from material damage and we quote from that part of the cross-examination:

"Q How did you get from the plane to the shore?

A Via the ice.

Q Then there wasn't open water between the plane and the shore, was there?

A We circled back up north, followed the edge of the ice to where the ice — — —

Q But there was ice between the plane and the shore?

A Ten feet of it, yes: maybe twenty feet at the most.

Q Well, how could the plane have been towed out then up to dry land up to over this four-foot bank?

A A very simple maneuver.

Q What?

A A very simple maneuver.

Q Well how?

A I imagine a cable attached to the plane could have dragged it from the bank.

Q Let's not have what you imagine. Let's have what you know.

A It would be my method of operation.

Q How thick was the ice where the plane went through?

A Three to three and a half inches probably.

Q You say there was an open space between the plane and the shore? There was also ice between the open space and the shore?

A Just as I said, about ten maybe twenty feet.

Q Yes. And your method would have been just to tie a cable to the plane and yank it right up to the bank?

A I think I would have broken the ice so that it wouldn't have damaged the plane."

As stated, Mr. Winchester was one of the passengers in the plane on its trip that ended on Lake Klamath. He was immediately available to defendant. Instead of enlisting his services in salvaging the plane, appealing defendant merely left the plane in the water of the lake and sent a telegram to plaintiff.

■ Reasonable minds might differ, but the jury could have found that defendant was negligent in taking the course that he did after the plane had been brought to rest upon the ice.

■ On the second ground urged as a reason for granting a rehearing, namely, that apparently the court applied the presumption of negligence on the part of a bailee that when delivery of the article in good condition is shown and failure to redeliver it or redelivering it in an impaired and damaged condition is shown. This court has announced that principle of law in *Hansen v. Oregon-Washington R. & N. Co.*, 97 Or. 190, 188 P. 963, 191 P. 655.

> * * * "In the ordinary case, according to the weight of modern authority, the bailor meets this burden where he supports the allegations of his complaint by proof of a delivery of the property to the bailee under a contract of bailment and the latter's failure or refusal to return it on demand. Most of the courts say that this constitutes a prima facie case or is prima facie proof of the bailee's liability. In actions based on negligence, an inference of negligence on the part of the bailee may be drawn from such proof, and the courts often say that it constitutes presumptive evidence of negligence, or that a presumption of negligence arises." Excerpt from 6 Am. Jur. Sec. 371, p. 449.

In marginal note 19, ibid, the citation includes *Hansen v. O. W. R. & N. Co.*, supra, and other authorities.

As to the second ground urged in appealing defendant's motion for rehearing, namely, that apparently this case was decided on the basis that the law raises a presumption in favor of the plaintiff by showing delivery to the defendant in good condition and a return in bad condition, the testimony, above quoted, of witness Winchester refutes the suggestion that only the presumption mentioned above supports the verdict of the jury.

The United States Supreme Court has announced the effect of the presumption under discussion in the

case of *Commercial Molasses Corporation v. New York Tank Barge Corporation*, 314 U. S. 104, 62 Sup. Ct. Rep. 156, 86 L. Ed. 89. The federal supreme court's holding in regard to such presumption or inference is well epitomized in paragraph 13 of the syllabus of that case as follows:

"The inference which may be drawn unfavorable to bailee upon bailor's establishing the unexplained failure to deliver goods safely does no more than require the bailee, if he would avoid the inference, to go forward with evidence sufficient to persuade that the nonexistence of the facts, which would otherwise be inferred, is as probable as its existence and it does not cause the burden of proof to shift."

The statement last above quoted is in harmony with and adds the highest authority to and support of the construction and effect of that presumption as announced in *Hansen v. O. W. R. & N. Co.*, supra.

In the case at bar, appealing defendant's witness Mr. Winchester in his testimony, above quoted, instead of refuting the presumption of negligence on appealing defendant's part, expressly placed before the jury testimony from which alone the jury could and apparently did find that appealing defendant was negligent in failing to salvage the plane in suit.

The motion for rehearing is denied.