Argued January 29; affirmed March 3; rehearing denied
April 7, 1936

# KEYS *v.* GRIFFITH
(55 P. (2d) 15)

*Robert F. Maguire,* of Portland (Maguire, Shields & Morrison and Donald K. Grant, all of Portland, on the brief), for appellant.

*E. K. Oppenheimer,* of Portland (Butler & Jack, of Oregon City, and Wilbur, Beckett, Howell & Oppenheimer, of Portland, on the brief), for respondent.

RAND, J. Plaintiff brought this action to recover for personal injuries sustained by him when struck by an automobile driven by the defendant. The case is here upon an appeal by the defendant from a judgment in favor of the plaintiff.

The accident happened between 10 and 11 o'clock on the evening of August 28, 1934, at a point on the Pacific highway a short distance south of Barlow. The highway at that place is a straightaway for half a mile or more in each direction and consists of a concrete pavement 20 feet in width with its center line marked and having on each side thereof a finished shoulder 10 feet in width, suitable for driving. Just before the accident happened, the plaintiff, who was driving south on the highway and being out of gasoline, parked his car, with his parking lights burning, on the west shoulder of the highway and returned to Barlow for gasoline. Upon returning to his car, he walked on the east side of the pavement until he reached a point opposite his parked car and started to cross the highway, when he was struck by defendant's car.

According to the testimony of Guy Watkinds, a state policeman who reached the scene of the accident a short time after its occurrence and saw the plaintiff lying on the west side of the pavement, the defendant pointed out the place where he had struck the plaintiff, which was 30 feet from the point where the plaintiff was lying. He said that the defendant said to him: "My God, it happened so quick I just didn't see him." He said he measured the burned tire marks

made by defendant's car and they extended from a point 60 feet south to a point 100 feet north of where the plaintiff was struck, and that he examined defendant's car and found its left headlight broken.

Clarence Eckert, who was an eye-witness, testified that he was driving a truck south on the highway some three or four hundred feet north of where the accident occurred; that his attention was first attracted by the swerving of defendant's car toward the center of the highway and then immediately to the right; that he saw defendant's left headlight go out and two objects flying through the air, one being the body of the plaintiff and the other a broken jug; that he stopped his truck, got out and went to where the plaintiff was lying on the west side of the pavement.

Dr. E. W. St. Pierre was passing the scene of the accident a few minutes after its occurrence and he testified that he stopped and found the plaintiff lying on the west side of the pavement in a semi-comatose condition and suffering from a severe concussion of the brain and a broken leg, the bones of which were protruding through the clothing. He also testified that the defendant said that he did not see the plaintiff.

In describing how the accident occurred, the plaintiff testified in part as follows:

"I walked on the shoulder on the east side of the road. * * * I traveled down about opposite my car. Right opposite my car. Then I stopped. * * * When I got up there I stopped and looked and there was a car coming to my right, from the north going south, and I waited until that car passed. Then there was no other car, so far as I can recall or seen at all, coming from the north. So I immediately looked south and there was a pair of big headlights coming but sufficiently far for me to be perfectly safe to go across

the highway. * * * I immediately started across the highway. I had gotten some—well, four or five steps. I could not say. But I was near the center of the highway and all of a sudden I realized this car was bearing right down on me. It was on to me before I could say anything. I had to go forward, and I advanced all I could. I could not get back for if I did I would step in front of him. That is the last thing I remember. * * * The car, just as I realized the car was bearing down on me, it seemed as though he turned right into me. That is the last thing I remember. Q. Can you estimate the speed that car was traveling? A. No, I could not. The light was glaring in my eyes and I could not say as far as the car was concerned. I could not see the car or mine either. So bright were the lights in my eyes I could not tell how fast the car would be coming when the lights faced me, but he must have come at a terrific speed."

And that, when he started to cross the highway, he would judge that defendant's car was from three-quarters to a block away.

According to the defendant's testimony, he was driving a Buick coupe from Salem to Portland and, at the time of the accident, was traveling at a speed of about 40 miles an hour or a little more; that there was other traffic going in both directions; that he first noticed the plaintiff walking toward him on the east side of the highway about 150 feet away; that the plaintiff stuck close to the edge of the pavement and defendant turned his car slightly to the middle of the pavement but did not cross the center line; that when about 50 or 60 feet away, defendant saw that the plaintiff was going to cross the highway and he swung his car to the right as hard as he could and applied the brakes; that his left fender struck plaintiff about five or six feet from the east side of the pavement and, as he

struck the plaintiff, his left headlight went out. Defendant also said that, when driving at a speed of 40 miles an hour, he could bring his car to a stop in about 85 feet under the conditions existing at the time of the accident.

There was other evidence tending to show that the night was dark but that the pavement was dry.

■ Under the provisions of section 20, subdivision (b), chapter 360, Laws 1931, the indicated speed for defendant's automobile at the place where the accident occurred was 45 miles per hour, and by the provisions of section 38, subdivision (c) of said chapter 360, it was the duty of plaintiff to yield the right of way to defendant's automobile at said time and place.

The defendant, at the close of plaintiff's case in chief, moved for a nonsuit and, at the close of all the testimony, he moved for a directed verdict. These motions were overruled and the case was thereupon submitted to the jury and a verdict was returned in favor of the plaintiff for the sum of $19,693.

The defendant assigns error in the overruling of these motions. His contention is that the plaintiff, in starting to cross the highway after seeing defendant's car approaching and without waiting for it to pass, was guilty of contributory negligence as a matter of law. For that reason and also because the statute granted the right of way to defendant's automobile at that time and place, defendant contends that he was entitled to have the case withdrawn from the consideration of the jury.

■ It has been repeatedly held by this court and it seems to be the rule generally that, when a pedestrian, who is about to cross a street or highway, sees an auto-

mobile approaching at such a distance from him that would lead a reasonable person to believe he can cross in safety, he has a right to proceed without waiting for the automobile to pass, and is not guilty of contributory negligence in so doing. The question in such a case is: Did the pedestrian use that degree of care for his own safety which an ordinarily prudent person would use in the same place and under the same conditions? And ordinarily this is a question of fact for the jury and not one for the court: *Marsters v. Isensee*, 97 Or. 567 (192 P. 907); *Casto v. Hansen*, 123 Or. 20 (261 P. 428); *Nisley v. Sawyer Service, Inc.*, 123 Or. 293 (261 P. 890); *Red Top Taxi Co. v. Cooper*, 123 Or. 610 (263 P. 64); *Hinckley v. Marsh*, 124 Or. 1 (263 P. 886); *Stryker v. Hastie*, 131 Or. 282, 288 (282 P. 1087); *Hecker v. Union Cab Co.*, 134 Or. 385 (293 P. 726); *Brady v. Schnitzer*, 135 Or. 250 (295 P. 961); *Emmons v. Skaggs*, 138 Or. 70 (4 P. (2d) 1115); *Krieger v. Doolittle*, 142 Or. 122 (18 P. (2d) 1041); *Purdin v. Richardson*, 148 Or. 68 (34 P. (2d) 926).

■■ It is settled law that a motion for a nonsuit or for a directed verdict admits the truth of plaintiff's evidence and of every inference of fact that can be reasonably and legitimately drawn therefrom, and that in considering such motions, the evidence must be interpreted in the light most favorable to the plaintiff. Among the cases so holding see *Saylor v. Enterprise Electric Co.*, 110 Or. 231, 253 (222 P. 304, 223 P. 725); *Crawford v. Cobbs & Mitchell Co.*, 121 Or. 628, 643 (253 P. 3, 257 P. 16); *Purdin v. Richardson*, supra; *Morser v. Southern Pac. Co.*, 124 Or. 384, 389 (262 P. 252); *Roberts v. Cohen*, 104 Or. 177, 192 (206 P. 293).

■ Where, upon trial, the question of negligence or contributory negligence is involved, it is for the judge

to say whether any facts have been established by sufficient evidence from which negligence can reasonably and legitimately be inferred, and it is for the jury to say whether from those facts, when submitted to it, negligence ought to be inferred: *Metropolitan Railway Co. v. Jackson*, 3 App. Cas. 193; *Randall v. Baltimore & Ohio R. R. Co.*, 109 U. S. 478, 482 (27 L. Ed. 1003, 3 S. Ct. 322).

■ The fact that the statute granted to defendant the right of way over the plaintiff at the time and place of the accident was not conclusive upon the question of whether plaintiff's own negligence contributed to his injury, or whether defendant's negligence was the sole cause of the injury. Nor is it now conclusive upon the question of whether the court correctly passed upon said motions. It was an element which the jury was bound to consider and presumably did consider when it determined, as it did, that the injury was caused by the sole negligence of the defendant.

Section 38, chapter 360, Laws 1931, so far as material to this question, provides:

"(a) The driver of any vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at the end of a block, except at intersections where the movement of traffic is being regulated by police officers or traffic control signals, or at any point where a pedestrian tunnel or overhead crossing has been provided. * * *

"(c) Every pedestrian crossing a roadway at any point other than within a marked or unmarked crosswalk shall yield the right of way to vehicles upon the roadway.

"(d) The provisions of this section shall not relieve the driver of a vehicle or the pedestrian from the duty to exercise due care."

▮▮▮ The right of way conferred by the statute is not inflexible and absolute. Neither is it exclusive nor one which may be exercised without due regard to the surrounding conditions and the safety and rights of others. Its exercise must at all times be reasonable and not arbitrary and, whenever danger to others may reasonably be anticipated from its exercise, due care and caution should be observed to prevent such injury: *West v. Jaloff*, 113 Or. 184 (232 P. 642, 36 A. L. R. 1391); *Stryker v. Hastie*, supra. As said by Walter H. Anderson in An Automobile Accident Suit, section 180, no person can rely on his having the right of way as a defense for his own negligence. See also *Keller v. Banks*, 130 Me. 397 (156 Atl. 817).

The basic rule prescribed by our statute is as follows:

"No person shall drive a vehicle upon a highway at a speed greater than is reasonable and prudent, having due regard to the traffic, surface and width of the highway and the hazard at intersections and any other conditions then existing.

"Nor shall any person drive at a speed which is greater than will permit the driver to exercise proper control of the vehicle and to decrease speed or to stop as may be necessary to avoid colliding with any person, vehicle or other conveyance upon entering the highway in compliance with legal requirements and with the duty of drivers and other persons using the highway to exercise due care; * * *."

Subd. (a), section 20, chapter 360, Laws 1931.

▮▮▮ If, as defendant said, when traveling at the rate of 40 miles an hour, he could stop his car in 85 feet and if, as Mr. Watkinds said, the marks on the pavement made by defendant's car extended for a distance of 160 feet after defendant had applied his brakes, as he said,

as hard as he could, then the defendant must have been traveling at an excessive rate of speed and without having his car under proper control in violation of the basic rule. These facts were sufficient to warrant the jury to infer that but for such excessive speed and lack of control on the part of the defendant, the plaintiff would have crossed the highway in safety and, therefore, that plaintiff sustained the injuries because of defendant's negligence and not by any fault of his own. Whether this was a proper inference to be drawn from the evidence was a question for the triers of fact and not one of law for the court. Hence, it was proper for the trial court to overrule defendant's motions and to submit the question to the jury for its determination.

■ The defendant excepted to the refusal of the court to instruct the jury as follows:

"I instruct you that there is no speed limit in this state, but motorists traveling upon a highway have a duty to observe the basic speed rule and to operate their vehicle at a speed which is reasonable and prudent under the circumstances taking into consideration the surface and width of the highway and the hazards of traffic. The rule is, in effect, that motorists must operate their vehicle at a speed commensurate with the danger existing at any given point upon the highway. At the point upon the highway where this accident occurred, there is no crossroad or regularly designated pedestrian cross-walk and the laws of this state have indicated a speed of forty-five miles per hour, so that under ordinary circumstances, when the highway was dry and the visibility clear, a motorist at that point would not be guilty of negligence when traveling at a speed of forty-five miles per hour."

The above instruction, if it had been given, would have been misleading and erroneous. In effect, it would have told the jury that, if the defendant was driving at

a rate not in excess of the indicated speed, he would not have been negligent even though he maintained no proper lookout, did not have his car under control, or was driving in violation of any other rule of the road except that of speed alone.

Finding no error in the record, the judgment must be affirmed.

CAMPBELL, C. J., and BEAN and BAILEY, JJ., concur.