Argued January 30, reversed and remanded February 26, 1958

INMAN et al v. OLLSON et al

321 P. 2d 1043

*William B. Murray*, Portland, argued the cause for appellants. With him on the briefs was Donald R. Stark, Portland.

*Robert L. Welch*, Lakeview, argued the cause and filed a brief for respondents.

Before Perry, Chief Justice, and Lusk, Warner and Kester, Justices.

WARNER, J.

Action by the plaintiffs appellant, Bert Inman, Orval Sorensen and C. L. Stuart, against the defendants respondent, Harold E. Ollson, Jack Ollson and others, to eject them as trespassers on four mining claim locations made by plaintiffs upon government lands open for mining entry in Lake County, Oregon. Plaintiffs appeal from an order granting an involuntary nonsuit.

Upon the conclusion of plaintiffs' case, the record discloses that plaintiffs had staked out four claims on the afternoon of July 9, 1954, and at the same time posted notices containing the information required

by subsections (1)(a) to (e), inclusive, of ORS 517.-
010.[1] Thereafter, on August 5, 1954, and within 30
days after posting these notices, they complied with
subsection (2) of ORS 517.010 by establishing the
boundary marking posts. On July 14, plaintiffs made
contact with one Elder, the owner of a bulldozer, with
a view of having him do the discovery work required
by ORS 517.020.[2] When the plaintiffs returned to
the premises on July 15, they found that the defendants
had, in the interim, been upon the property and posted
thereon notices covering the same claims that plaintiffs
had located on July 9. The defendants (who, it was

---

[1] "517.010 *Location of mining claims on federal lands.* (1) Any person, a citizen of the United States, or one who has declared his intention to become such, who discovers a vein or lode of mineral-bearing rock in place upon the unappropriated public domain of the United States within this state, may locate a claim upon such vein or lode by posting thereon a notice of such discovery and location. The notice shall contain:

"(a) The name of the lode or claim.

"(b) The names of the locators.

"(c) The date of the location.

"(d) The number of linear feet claimed along the vein or lode each way from the point of discovery, with the width on each side of the lode or vein.

"(e) The general course or strike of the vein or lode as nearly as may be, with reference to some natural object or permanent monument in the vicinity, and by defining the boundaries upon the surface of each claim so that the same may be readily traced.

"(2) Such boundaries shall be marked within 30 days after posting of such notice by six substantial posts, projecting not less than three feet above the surface of the ground, and not less than four inches square or in diameter, or by substantial mounds of stone, or earth and stone, at least two feet in height, to wit: one such post or mound of rock at each corner and at the center ends of such claims."

[2] "517.020 *Work on claim; requirements; affidavit; recording.* (1) Before the expiration of 60 days from the date of the posting of the notice of discovery upon his claim as provided in ORS 517.010 and before recording the notice of location as required by ORS 517.030, the locator must sink a discovery shaft upon the claim located to a depth of at least 10 feet from the lowest part of the rim of such shaft at the surface, or deeper if necessary, to show by such work a lode or vein of mineral deposit in place. A cut or crosscut or tunnel which cuts the lode at a depth of 10 feet, or an open cut at least six feet deep, four feet wide and 10 feet in length along the lode from the point where the same may be in any manner discovered, is equivalent to such discovery shaft. Such work shall not be deemed a part of the assessment work required by the Revised Statutes of the United States.

"(2) The locator, or someone for him who did work upon and has knowledge of the facts relating to the sinking of the discovery shaft, shall make and attach to the copy of the notice of location to be recorded an affidavit showing the compliance by the locator with the provisions of this section, which affidavit shall be recorded with the copy of the location notice."

later learned, were Montana people) were unknown to plaintiffs and their efforts to locate them proved unavailing. Elder visited the premises with plaintiffs on July 24 to look the site over and decide where the discovery work should best be done; and it was then decided to do it in the first week in September in deference to Mr. Elder's convenience and availability.

On August 5 and August 14, plaintiffs were again on the property, but they then found no indications that the defendants had returned since July 12. Indeed, on the fourteenth of August, there was no evidence that the defendants had marked the boundaries with posts within 30 days after their attempted location as required by ORS 517.010(2), supra, and they thereupon concluded that the defendants had abandoned their trespass.

From the record we learn that plaintiffs, after August 14, were next upon the claims on September 7, waiting for Elder to come and proceed with the work required by ORS 517.020, supra, when, and for the first time, they were greeted with a warning sign giving notice that "these claims had been properly located and that anyone trespassing on the property would be prosecuted to the full extent of the law." The warning was signed by some of the defendants. A determined occupancy on the part of the defendants was made further evident by the presence of the discovery work done by them with a "cat" left on the premises and fuel supply for its use. They thereupon retired to avoid, as stated by the plaintiff Sorensen, the possibility of a fight. Even then and for sometime afterward they did not know who the defendants were or where they resided. The only clue they then had was that they were probably people from Montana. This, they derived from the fact that the notices employed

in posting indicated that they were printed in that state. After September 7, the plaintiffs temporarily ceased operations, consulted attorneys and on October 16, 1954, filed this action in ejectment. No contention is made that they completed the discovery work required by ORS 517.020, supra, within the required 60 days or had recorded the notices dictated by ORS 517.030[3] within that time.

■ Our inquiry must be limited to the specific reasons relied upon by the defendants as grounds for the allowance of their motion for nonsuit. *Dayton v. Fenno* 99 Or 137, 145, 195 P 154; 27 CJS 244, Dismissal and Nonsuit § 67.

The defendants' motion, made at the conclusion of plaintiffs' case, is of some length but may be fairly summarized by saying it relies primarily upon the claim that plaintiffs' evidence discloses that they did not work and file certain notices required by the mining laws within the time thereby stipulated. It urges that by reason thereof the plaintiffs had forfeited all rights to possession of the claims in question. The motion further states that after discovering defendants' trespass the plaintiffs unduly delayed action to oust them. Taken by its entirety, it rests primarily upon the proposition that the plaintiffs have failed to prove their right to the possession of the mining claims from whence they allege they were ousted by the defendants.

---

[3] 517.030 *Recording copy of discovery notice and the affidavit of work; fee.* The locator shall, within 60 days from the posting of the location notices by him upon the lode or claim, file for record with the recorder of conveyances, if there is one, who shall be the custodian of mining records and miners' liens, otherwise with the clerk of the county where the claim is situated, a copy of the notice posted by him upon the lode or claim, having attached thereto an affidavit showing that the work required by ORS 517.020 has been done, and shall pay the recorder or clerk a fee of $1 for such record, which sum the recorder or clerk shall immediately pay over to the treasurer of the county and shall take his receipt therefor, as in case of other county funds coming into the possession of such officer. The recorder or clerk shall immediately record the location notice and the affidavit annexed thereto. No location notice shall be entitled to record, or be recorded, until the work required by ORS 517.020 has been done and the affidavit in proof thereof is attached to the notice to be recorded."

We, therefore, test plaintiffs' testimony in terms of the motion's challenge.

■ It is settled law that on a motion for nonsuit or a directed verdict, all competent evidence of plaintiff is not only entitled to belief, but also to every favorable inference that can be reasonably drawn therefrom. *Saylor v. Enterprise Electric Co.*, 110 Or 231, 253, 223 P 725; *Keys v. Griffith*, 153 Or 190, 196, 55 P2d 15, and cases there cited.

■ It is well to notice before proceeding further that it is an established rule that mining statutes are to be liberally construed, especially when it is sought to forfeit a claim. This liberality is indulged to protect prospectors who have made discoveries under them, and as a general proposition, a substantial compliance therewith is all that is required. 36 Am Jur 326, Mines and Minerals § 68; 58 CJS 79, Mines and Minerals § 34; 2 Lindley on Mines (3d ed) 899 § 381; Costigan on Mining Law (Hornbook Series) 29 § 6.

■ In this matter, it was unnecessary to the court's determination of its ruling on the motion for nonsuit, to reach and rest, as it did, its ruling on the question of whether or not there had been a forfeiture under the Oregon mining law. That could only arise when the record shows that there has been a relocation of the same claim by another party. 58 CJS 142, Mines and Minerals § 81(a). It is only when such a relocation is made apparent that the statutes are invoked to determine whether or not the first locator has forfeited his right to the claim location occupied. This is made evident in *Sharkey v. Candiani*, 48 Or 112, 85 P 219, where the court says at page 123:

> "State legislation supplemental to the acts of Congress, which prescribes the method to be pursued by a locator as a condition precedent to making

a valid appropriation of the public lands of the United States, containing valuable mineral deposits, *is designed as a rule of evidence only, to determine the rights of an adverse claimant of the premises,* under a subsequent location thereon of a mining claim. This must, upon principle, be the object of such laws, \* \* \*." Citing *Erhardt v. Boaro,* 113 US 527, 28 L ed 1113, 5 S Ct 560, hereinafter referred to. (Emphasis ours.)

■ The validity of the defendants' alleged relocation would not, in ordinary course, be met, if at all, until the defendants had presented their case disclosing an apparent valid relocation on plaintiffs' ground, thereby giving to them a right of possession paramount to that of plaintiffs. Such was defendants' burden to do in proper time and then only by clear and convincing proof. *Richen v. Davis,* 76 Or 311, 316, 317, 148 P 1130; *Bishop v. Baisley,* 28 Or 119, 126, 41 P 937.

■ After a location is made pursuant to ORS 517.010 and 517.020 supra, and as the record shows the plaintiffs have done with reference to the challenged claims, the locators under ORS 517.030, supra, have "60 days from the posting of the location notices" in which to complete their discovery work and make and record the records by that section required. As to plaintiffs' claims, this would run from July 9, 1954, to September 7, 1954. Unless abandoned, prior to that time, no valid relocation of the same ground can be made by any third parties during the intervening 60-day period. No abandonment is shown by plaintiffs' case nor is any evidence of abandonment claimed by the defendants' motion for nonsuit. On the contrary, it appears that plaintiffs, until deterred by defendants' adverse occupancy and activities, continued in good faith and with reasonable diligence to make full compliance with the mining laws. Nor is there any evidence that the

defendants enjoy the status of subsequent relocators, that is, subsequent to the termination of 60 days, which would be September 7, 1954. Whether the plaintiffs had done those things essential to a valid location, as claimed, was a matter to be properly submitted to the jury as a question of fact. *Young v. Papst*, 148 Or 678, 691, 37 P2d 359.

■ Plaintiffs, by way of proving defendants' trespass upon their claims, introduced two notices of location which they say were posted upon their claims by defendants. These notices recite a claim in defendants as of July 12, 1954, three days after the entry or location by the plaintiffs. We have already taken note of the testimony of plaintiffs that the defendants, sometime prior to September 7, 1954, and subsequent to plaintiffs' last visit on August 14, had entered on plaintiffs' claims, sunk a discovery shaft and done other work. We do not intend to prejudice defendants' case before they have their opportunity to present it in full on the question of their own claim to a valid relocation on the lands occupied by the plaintiffs, but observe that if it rests solely upon the attempted location made by the defendants as of July 12, then it must fail. The trial court's opinion on the motion does not clearly so show, but if, perchance, this evidence of trespass on the part of the defendants was given consideration as proof of some superior right of location and right of possession reposing in the defendants, then it was clearly in error.

Title to a mining claim cannot be initiated by an entry upon a prior valid existing location, and, as plaintiffs' evidence shows, their location of July 9 was limited to September 8, 1954. *Kirk v. Meldrum*, 28 Colo 453, 65 P 633, 635. To the same effect, see *Swanson v. Sears*, 224 US 180, 56 L ed 721, 32 S Ct 455,

where the court, speaking through Mr. Justice Holmes, says: "A location and discovery on land withdrawn *quoad hoc* from the public domain by a valid and subsisting mining claim is *absolutely void* for the purpose of founding a contradictory right  *  *  *  [and] His [the subsequent locator] entry was a trespass, his claim was void, and the defendant's forfeiture did him no good." (Last emphasis ours.) The court's judgment was for the original locator.

Swanson is in accord with the well-settled rule that if a subsequent locator attempts to locate on lands already subject to a valid location, the claim of the last locator is void abinitio, conferring no rights in the premises. Moreover, a claim so made by a subsequent locator does not become effective by the termination of the statutory period which the first locator has in which to do his discovery work, even though the first locator fails to do that work.

In *Sierra Blanca Mining & Reduction Co. v. Winchell*, 35 Colo 13, 83 P 628, the rule finds clear statement:

> "A location based upon a discovery within the limits of an existing and valid location is void. Sullivan v. Sharp (Colo. Sup.) 80 Pac. 1054. A location notice properly made and posted upon a valid discovery of mineral is an appropriation of the territory therein specified for the period of 60 days. During this period, no one can initiate title thereto which would be rendered valid by the mere failure of the first appropriator to perform the necessary discovery work within the time prescribed by law.  *  *  *"

Also see *Belk v. Meagher*, 104 US 279, 284, 26 L ed 735; *Nash v. McNamara*, 30 Nev 114, 93 P 405, 410; *Winters v. Burkland*, 123 Or 137, 142, 260 P 231; 2 Lindley on Mines, supra, 794-795 § 339.

The prime issue for the court's determination under the motion was not whether the plaintiffs had forfeited their rights to their mining location, but the more simple question of whether or not the plaintiffs had proved that they were entitled to possession.

■ In this state the rule is fixed that bare possession is a sufficient interest in land to enable one ousted therefrom to eject a trespasser or one unable to show a better title. *Kingsley v. United Rys. Co.*, 66 Or 50, 55, 133 P 785, and cases there cited; *Feehely v. Rogers*, 159 Or 361, 376, 80 P2d 717.

■ Did the plaintiffs enjoy such possessory rights at the time of the defendants' entry and ouster of plaintiffs? We think they did. As said by Mr. Justice WOLVERTON in *Bishop v. Baisley*, supra, at page 126:

"A mining claim subsequent to a valid location is property in the highest sense of the term. It may be bought and sold, and will pass by descent. It carries with it the 'exclusive right of possession and enjoyment of all the surface included within the lines' of location. The right is a valuable one, and is protected by law. * * *"

Also see *Ferris v. McNally*, 45 Mont 20, 121 P 889, 891-892; 2 Lindley on Mines, supra, 792-793 § 339; 58 CJS 81, supra; *Erhardt v. Boaro*, supra.

"Possession, at all times, without regard to record, location or even the fee simple," says Morrison's Mining Rights (16th ed), at page 99, "still gives a certain title as against a mere trespasser, upon which ejectment and other actions may be maintained." Citing *Campbell v. Rankin*, 99 US 261, 25 L ed 435, 436; *Haws v. Victoria C. M. Co.*, 160 US 303, 16 S Ct 282, 40 L ed 436, 440.

■ Forfeiture does not operate ipso facto but only becomes complete and effectual when another enters on the ground after the expiration of the time when the statutory labor may be done and completes a relocation before the resumption of the work by the original locator. *Wilbur v. US ex rel. Krushnic*, 280 US 306, 317, 74 L ed 445, 50 S Ct 103; *Ickes v. Virginia-Colorado Development Corp.*, 295 US 639, 643, 645, 79 L ed 1627, 55 S Ct 888. Such is the rule in Oregon. See *Oliver v. Burg*, 154 Or 1, 58 P2d 245, where the court held at page 26:

"* * * It is settled law that the resumption of work at any time prior to the lawful intervention of an intervening right prevents forfeiture: 2 Lindley on Mines, section 651. As stated in the same section:

" 'A forfeiture does not ensue from the mere failure to comply with the law. It requires the intervention of a third party and a relocation of the ground before any forfeiture can arise.' "

■ Until there is a forfeiture, a miner may remain in possession. "On the public domain of the United States a miner may hold the place in which he may be working against all others having no better right." *Zollars v. Evans*, 5 F 172, 173 (CCD Colo). The Zollars case is also recognized as authority for the proposition that if no third party rights intervene, the locator can continue his discovery work after the expiration of the 60-day period and still perfect his location. *Strepy v. Stark*, 7 Colo 614, 5 P 111, 114. More recently this doctrine has been confirmed in *Union Oil Co. v. Smith*, 249 US 337, 345, 63 L ed 635, 39 S Ct 308 (1918), where it is said:

"* * * Those who, being qualified, proceed in good faith to make such explorations and enter peaceably upon vacant lands of the United States

for that purpose are not treated as mere trespassers, but as licensees or tenants at will. For since, as a practical matter, exploration must precede the discovery of minerals, and some occupation of the land ordinarily is necessary for adequate and systematic exploration, legal recognition of the *pedis possessio* of a *bona fide* and qualified prospector is universally regarded as a necessity. It is held that upon the public domain a miner may hold the place in which he may be working against all others having no better right, and while he remains in possession, diligently working towards discovery, is entitled—at least for a reasonable time—to be protected against forcible, fraudulent, and clandestine intrusions upon his possession. * * *" Citing, among other cases, the Zollars case, supra.

*Erhardt v. Boaro*, supra, a decision of Justice Stephen J. Field, has long been recognized as a classic case in the mining law. Its facts have much in common with those in the instant matter. It there appears that Erhardt et al., plaintiffs appellant and original locators, took possession of the disputed claim on June 17, 1880, and the defendants, Boaro et al., claimed the discovery of the claim 13 days thereafter, i.e., June 30, 1880, and within the time allowed by the law of Colorado, made the Boaro location one of record. Sometime in July of that year, the defendants had entered into possession of the premises and by threats of violence to the plaintiff et al. had continuously retained possession and thereby prevented the plaintiffs from resuming their work and completing their discovery. At page 534, the court observes:

"* * * They [the plaintiffs] did not lose their right to perfect their location, and perform the necessary work for that purpose, by the wrongful intrusion upon the premises, and by threats of violence if they should attempt to resume possession. As against the defendants, they were entitled

to be reinstated into the possession of their claim. They could not be deprived of their inchoate rights by the tortious acts of others; nor could the intruders and trespassers initiate any rights which would defeat those of the prior discoverers."

The holding of the lower court was reversed and the case remanded.

We take notice that in Erhardt, the plaintiffs were deterred by defendants' threats of violence, whereas, the conduct of the defendants at bar is not shown by plaintiffs' case to have been accompanied by any threats of violent character. But we do not recognize this as a controlling distinction. In order to constitute an ouster, it is not necessary that an eviction be accompanied by force. Nor is the actual personal presence of the defendant necessary; any subjection to the defendant's will and domain is sufficent. 18 Am Jur 43, Ejectment § 43; 28 CJS 878, Ejectment § 25. "* * * in a general way it may be said that any acts of ownership and control over the property to the exclusion of the plaintiff will constitute an ouster." 18 Am Jur, supra, 42 § 42. See *Goldsmith v. Smith,* 21 F 611, 613 (1884), where Justice Field, while sitting as a member of the Circuit Court for the District of Oregon, construed proof of ouster in Oregon code as "a denial of the plaintiff's right of possession the equivalent of actual ouster, so as to authorize a recovery upon proof of such denial, when his right is otherwise established." This definition is a salutary one, in that it invites recourse to the courts for a determination of conflicting claims rather than to possible use of force and thus give rise to breaches of the peace. We do not think that plaintiffs were bound at any time after the discovery of defendants' trespass to enter the premises and risk a possible violent encounter with

defendants, or their agents, in order to complete their work.

We hold that the plaintiffs presented a prima facie case in ejectment before they rested.

The question raised by defendants' motion as to whether the plaintiffs proceeded with reasonable diligence to protect their rights against the invasion of their claims by defendants, we deem, under the circumstances evident in this case to be one of fact for jury determination. 53 Am Jur 198, Trial § 230; 88 CJS 503, Trial § 219; *Gill v. Hale & Kilburn Co.*, 257 F 906, 909 (CCA Ohio); *Hall v. Union Central Life Ins. Co.*, 23 Wash 610, 63 P 505, 506.

Reversed and remanded.