Argued October 5, affirmed November 9, 1960

## COPENHAGEN, INC. *v.* KRAMER ET UX

356 P. 2d 1064

*Martin Schedler,* Portland, argued the cause for appellant. On the briefs were Schedler & Moore, Portland.

*C. E. Wheelock,* Portland, argued the cause for respondents. On the brief were Wheelock, Richardson & Niehaus, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and KING, Justices.

KING, J. (Pro Tempore)

This is an action at law brought by the plaintiff, as subcontractor, against the defendants, as owners, for the reasonable and agreed value of labor and supplies furnished for the plumbing and heating of the defendants' home.

In 1955 the defendants contracted with a Mr. Miller to construct a home for them in Portland, Oregon. Shortly thereafter, in 1955, Mr. Miller subcontracted orally with the plaintiff to install the plumbing and radiant heat in a floor slab in the house for a total of $3,028.98, including $80 extra for rock excavating and $23.98 for a sink. Later a sump pump was furnished to the defendants directly, for which they admit liability, and it is not further involved here.

The work was completed, or practically so, about April 15, 1957, and there was still a balance due the plaintiff in the sum of $1,954.20. The general contractor, Mr. Miller, failed to pay the plaintiff and is apparently insolvent.

During the course of construction the plaintiff, at the request of Mr. Miller, placed its heating system pipes in place before the vapor barrier membrane had been placed over the gravel and under the piping to

keep moisture from coming up into the concrete floor slab.

The general contractor, Mr. Miller, poured the four-inch concrete slab and embedded the heating coils or pipes without first installing the moisture membrane. This condition was discovered by a representative of the Veterans' Administration, the guarantor of the mortgage, and funds were withheld pending correction of the floor condition. Later it was determined that the funds would be released if the vapor membrane was placed on top of the four-inch floor slab and an additional two-inch concrete slab placed on top of the vapor barrier. This was done by the general contractor.

During all this time the plaintiff was looking to Mr. Miller, the general contractor, for its pay, and it did, in fact, receive $1,399.76 from him. The exact date of his default is not clear. However, on September 13, 1957, the plaintiff filed a mechanics' lien against the real property for a claimed amount of $1,999.22. This variation in the claimed amount is not explained. The lien claims were not exercised in time and were not effective.

The plaintiff's president, Mr. Markman, claims that about the time of the lien filing the defendants orally agreed to assume and pay the balance of Mr. Miller's bill *if we completed the thing he required to make the system satisfactory to him.*

At the close of plaintiff's case the defendants moved for a nonsuit, which was granted by the trial court.

The general question for determination is: "Was an involuntary nonsuit against the plaintiff properly granted? This is the substance of the only assignment of error raised by the plaintiff.

■ In determining this question, we are guided by two well-known rules of law: (1) that the competent evidence of the plaintiff is entitled to belief and to every favorable inference that can reasonably be drawn from it. *Saylor v. Enterprise Electric Co.*, 110 Or 231, 253, 222 P 304, 223 P 725; *Keys v. Griffith,* 153 Or 190, 196, 55 P2d 15; *Inman et al. v. Ollson et al.,* 213 Or 56, 62, 321 P2d 1043.

And, secondly, as also mentioned by Justice WARNER in *Inman et al. v. Ollson et al.,* supra:

> "Our inquiry must be limited to the specific reasons relied upon by the defendant as grounds for the allowance of their motion for nonsuit. Dayton v. Fenno, 99 Or 137, 145, 195 P 154; 27 CJS 244, Dismissal and Nonsuit § 67."

The defendants' motion for nonsuit reads as follows:

> "If the court please, at this time defendants move the court for the entry of an order of involuntary nonsuit as against the plaintiff.
> "The first ground and basis of the motion is upon a failure of proof of the material allegations contained in the complaint.
> "The second ground of the motion is to the effect that there was never any contract of any type between the defendant[s] and the plaintiff which would be enforceable under the terms and provisions of the statute of frauds.
> "The third ground is that there was, in fact, no evidence of an actual agreement of any type between the plaintiff and the defendants for the payment of said funds."

■ We believe that the involuntary nonsuit was properly granted. There was a complete failure of proof of the material allegations of the complaint. The complaint alleges goods, wares, merchandise and labor delivered to the defendants at their special instance

and request. The proof shows that the goods were delivered to Mr. Miller at his special instance and request. There is no allegation in the complaint that the defendants verbally or otherwise assumed and agreed to pay the balance of Mr. Miller's account. There was no attempt at any time to amend the complaint.

The proof presented, considering it in the light most favorable to the plaintiff, showed that the defendants agreed to pay the balance of Mr. Miller's account when and if the plaintiff made the heating and plumbing systems work to their, the defendants', satisfaction.

Mr. Markman, president of plaintiff corporation, in his testimony before the court, when asked regarding the agreement of defendants to pay, said:

"A  Mr. Kramer said that if we completed the balancing and repairing or taking care of certain of the things in the plumbing and heating system that he desired, to meet his satisfaction, that he would pay us the money that was owed us.

"Subsequently, we continued to adjust the plumbing system and the heating system. The plumbing system admittedly to his satisfaction, the heating system not so."

Later on direct examination Mr. Markman, when asked regarding complaints other than heating, testified as follows:

"A  Only the problem of plumbing, in regard to rust coming out of the tub faucet.

"Q  Did you attempt to fix that?
"A  Yes.

"Q  Were you successful?
"A  I haven't checked it since we were out there. Mr. Kramer says there still is some rust."

This was a comparatively small item and was somewhat explained by other testimony of plaintiff's wit-

nesses, but it still showed that the work was not completed to the satisfaction of the defendant, or what would satisfy reasonable persons in their position.

The plaintiff, by its own testimony, has shown a lack of performance on its part of the claimed oral contract with the defendants, and under such conditions it is unenforceable.

The plaintiff cites *Eilertsen v. Weber et al.,* 198 Or 1, 255 P2d 150, and in a memorandum of additional authorities, *Columbia Brick Works v. Freeman et ux.,* 223 Or 109, 353 P2d 620, to sustain its position. In both those cases it was held that where there was a direct benefit to the defendants and that the defendants' position was really principal obligator and not guarantor, the oral promise was outside the statute of frauds. In both these cases there was substantial work and material furnished after the defendants' promise. The Eilertsen case was decided primarily on the *quantum meruit* basis, as a substantial portion of the labor and materials was furnished direct to the defendants after their agreement to pay.

In this case the plaintiff performed only a few hours' additional work after the alleged agreement with the defendants, and this consisted entirely of attempting to balance the heating system and make it proper for the various rooms. Most of this work and time would have been necessary to complete its original contract with Mr. Miller. Nothing was done to change the heating system materially. There was very little, if any, additional direct benefit to the defendants, and the work was not completed. The defendants still have a malfunctioning heating plant, and not one that is reasonably satisfactory or that satisfies them.

The judgment of the circuit court is affirmed.