Argued October 13, reversed and remanded November 8, 1961.

# SCHENK *v.* LAMP

365 P. 2d 1068

*Philip A. Levin,* Portland, argued the cause for appellant. On the briefs were Pozzi, Levin & Wilson, Portland.

*John C. Aniker, Jr.,* Oregon City, argued the cause for respondent. On the brief were Jack, Goodwin & Santos, Oregon City.

Before WARNER, Presiding Justice, and SLOAN, O'CONNELL, LUSK and BRAND, Justices.

## WARNER, J.

This is an action brought by the plaintiff, Hilda E. Schenk, a tenant in a house in Clackamas, Oregon, that she and her husband were renting from the defendant-landlord, Carl Lamp. Plaintiff seeks damages for injuries sustained as the result of a fall on the back steps of the leased premises. She alleges that the defendant agreed at the time of the execution of the verbal leasing agreement in February, 1958, to make certain repairs on the premises, and specifically to repair the back porch steps. It was the collapse of a portion of the porch on September 3, 1959, that caused her injuries. It is her contention that defendant was negligent in failing to repair the porch and steps after due notice of their defective condition.

At the close of plaintiff's case the defendant moved for an order of involuntary nonsuit. This was granted by the trial court and plaintiff appeals.

The only assignment of error raised by the plaintiff is: did the court err in granting defendant's motion?

■ In determining this question we are mindful that it is settled law that a motion for nonsuit admits the truth of plaintiff's competent evidence and of every inference of fact that can be reasonably and legitimately drawn therefrom; and that in considering the motion, the evidence must be interpreted by the court in the light most favorable to the plaintiff. *Copenhagen, Inc. v. Kramer,* 71 Adv Sh 645, 647, 224 Or 535, 356 P2d 1064, 1065; *Inman v. Ollson,* 213 Or 56, 62, 321 P2d 1043; *Keys v. Griffith,* 153 Or 190, 196, 55 P2d 15.

The gist of defendant's motion was: that there was no evidence of negligence sufficient to submit to the jury; that there was no proof of a specific contract creating a duty on the part of the defendant to maintain the premises; that the plaintiff never requested defendant to make any repairs to the steps or porch; and that the injury was the result of plaintiff's own negligence, which in his brief he declares to mean negligence as a matter of law.

The plaintiff contends that the rental agreement included a stipulation binding the landlord to make repairs and that he subsequently received notice of this need and in time to enable him to do the necessary work.

■ Not only are the uncontroverted facts clear, but likewise the applicable law. In the recent case of *Bickham v. Reynolds,* 71 Adv Sh 307, 311, 224 Or 194, 355 P2d 756, 758 (1960), these principles were thoroughly reviewed and the following from 51 CJS 1071, Landlord and Tenant § 366, cited with approval:

> "In the absence of statute or express covenant or stipulation, a lessor is not bound to make repairs to the leased property, or to keep it in repair, except to the extent to which he retains control."

It expresses a rule long followed in this state, as indicated by the cases there cited, including *Garrett v. Eugene Medical Center,* 190 Or 117, 127, 224 P2d 563; *Asheim v. Fahey,* 170 Or 330, 333, 133 P2d 246; *Teel v. Steinbach Estate,* 135 Or 501, 504, 296 P 1069. The *Asheim* case expanded upon the principle and guides us to the conclusion we reach here. It reads:

"In the absence of a special agreement to make repairs upon demised premises, a landlord is under no duty to do so. 32 Am. Jur., Landlord and Tenant, section 705. He may, of course, by the terms of his lease, covenant to make repairs, but the law in that connection is that he must have timely notice of the need for repairs before he is obliged to make them. If, after such notice and a reasonable opportunity to make the repairs, the landlord fails to do so, and damage to the tenant or his invitees results, the landlord may be held liable. *Ashmun v. Nichols,* 92 Or. 223, 234, 180 P. 510; *Teel v. Steinbach Estate,* 135 Or. 501, 504, 296 P. 1069." (170 Or at 333)

Both parties concede that the law is fundamentally as we have stated it above. The controversy, therefore, is whether plaintiff introduced evidence sufficient to support a *prima facie* case entitling her to a jury determination of the issues.

■ A reading of the transcript, viewed in a light most favorable to the plaintiff, leads us to the conclusion that there was sufficient evidence to entitle plaintiff to have had her case presented to the jury on the question of the defendant-landlord's duty to make the repairs and notice to him of the need therefor.

Plaintiff and her husband first rented the house from defendant in February, 1958, on a month-to-month basis. At that time the parties discussed the rental terms while inside the house. Then they walked

around to the back of the house where defendant stated that he was going to put a new roof on, repair a window, fix the back porch, and build a garage. The lower court held that the evidence did not show a valid agreement to repair, based upon sufficient consideration, since it appeared that the final rental agreement was entered into before the statement of the intent to repair was made; in short, that the rental agreement was consummated in the house before the parties made their tour of inspection in the yard.

Plaintiff gave the following testimony, which was later substantiated by her husband:

"Q Now, who did you first contact about renting the house?

"A Well, we were looking for a home to rent and we saw that the house looked like it was vacant and we went to see if it was and Mr. Lamp was inside painting it, and we asked him about it.

"Q And did you have a discussion with him concerning whether or not you would rent the house?

"A Yes.

"Q Did you discuss the rent?

"A Yes, we did. We asked him how much the payments were and all.

"Q Did you have any discussion as to anything else pertaining to it?

"A Well, yes. After I looked at the home and asked what the rentals were, I told him I would like to walk around the back to see the yard and the clothes line and all three of us, my husband and I and Mr. Lamp walked around the back to the back porch and he looked at the roof and was going to put a new roof on and there was a window he had to take care of, and he said, 'I am going to fix that porch. You need a garage and I am going to build a garage, and if there is anything

goes wrong be sure and let me know. If you don't I will have no way of knowing.

"Q And was this prior to the time that you rented the property?

"A Yes.

"Q And the back porch that you referred to, is that the porch from which you fell?

"A Yes, it is.

"* * * * *

"Q Did Mr. Lamp say he would fix the back porch?

"A He said, 'I am going to fix the back porch.'

"Q And did you rely on that, that he would fix it?

"A Yes, I did, yes."

It will be observed that plaintiff stated the promises to repair were made prior to the final agreement to rent and that she relied upon defendant's promise to repair the porch. In this she is supported by the following testimony of Mr. Schenk:

"Q Would you have rented the house if he hadn't promised to repair the back porch?

"* * * * *

"A No."

On cross-examination Mr. Schenk later answered affirmatively to the following question: "So the deal was fully *consummated* on the amount of rent, the month to month tenancy, before you went outside, wasn't it?" (Emphasis supplied.) However, on re-direct he stated that he did not understand what the word "consummated" meant, thus reducing the weight which a jury might accord to his prior answer.

Mrs. Schenk testified that on two occasions prior to the September 3, 1959, accident in which she was

injured, parts of the back porch gave way and the condition of the porch was called to the defendant's attention. Mr. Schenk corroborated his wife on the matter of notice. According to his testimony, he told Mr. Lamp about the condition of the porch prior to June, 1959. In June, 1959, a porch step broke when plaintiff stepped on it. Sometime between July and September, 1959, the railing on the porch broke, causing Mr. Schenk to fall. After each of these accidents plaintiff and her husband complained to defendant, and on each occasion defendant promised to fix the defects as soon as he could get around to it, but this he never did.

In light of the aforementioned record, it was a matter for the jury to determine whether the rental contract included a covenant by the landlord to make repairs and whether he received notice from the Schenks as to the need for repairs.

We also find that there was evidence from which the jury might find that there was a general contract at the time plaintiff entered as a tenant that the defendant would make such repairs from time to time as were necessary to make the house habitable. By reference to Mrs. Schenk's testimony concerning the offer of Mr. Lamp to build a garage, reroof the house, take care of a window and "fix that porch," he also added: "and if there is anything goes wrong be sure and let me know." This statement following as it does the enumeration of the other items requiring present repair or replacement, we construe as a commitment to make any future repairs to the premises when the need therefor became known.

*Ashmun v. Nichols,* 92 Or 223, 178 P 234, 180 P 510, was a case wherein the landlord agreed at the

time of renting to keep the premises in repair. It was there held:

"In a case like this we think that when a landlord agrees to keep his premises in repair, the law fastens upon him a *duty* to keep that contract, and if he violates that duty, after notice of the dangerous condition, he ought in principle to be liable for whatever injuries the tenant naturally and necessarily receives from such breach of duty.   \*  \*  \*" (92 Or at 234)

Defendant contends that any knowledge he had concerning the necessity of repairing the porch was not sufficient to put him on notice of the particular defect which proximately caused plaintiff's injuries. We think a jury could find that if defendant promised to fix the porch, he promised to fix the *entire porch,* as inspection disclosed a need therefor, and thus any notice received by him did not have to be so specific as to relate to the fact that the exact board that eventually broke was the one in need of fixing. The several notices given to him of the various previous accidents which the Schenks had suffered from the faulty condition of the back porch and steps were notice of the necessity for the porch repair.

■ The defendant attempts to raise the following additional point in his brief which he contends should defeat plaintiff's appeal: "Prolonged usage by a tenant of a defective condition of the premises with knowledge of the condition renders the tenant guilty of contributory negligence as a matter of law."

The statement is inspired by the opinion in *Busick v. Home Owners Loan Corporation,* 91 NH 257, 18 A2d 190, and is the only case cited by defendant in support of that proposition. We submit that that case cannot be reconciled with *Pritchard v. Terrill,* 189 Or

662, 666, 222 P2d 652, 25 ALR2d 358 (1950), a defective step case, following and quoting from page 239 of *Ashmun v. Nichols,* supra, to the effect that the question of contributory negligence under circumstances akin to those here was a question for the jury. See, also, *Bockman v. Mitchell Bros. Truck Lines,* 213 Or 88, 96, 320 P2d 266, 69 ALR2d 152.

Reversed and remanded.