Argued June 5, affirmed June 26, 1975

BELL, *Appellant, v.* BERNARD MOTORS,
INC., *Respondent.*

537 P2d 86

*William G. Whitney,* Portland, argued the cause
and filed a brief for appellant.

*James H. Gidley,* of Cosgrave & Kester, Portland,
argued the cause and filed a brief for respondent.

HOWELL, J.

Plaintiff filed this action for personal injuries
suffered in a fall on premises owned by defendant and

leased to plaintiff's employer. The trial court granted a directed verdict for defendant, and plaintiff appeals.

Plaintiff was an employee of the Clackamas County Assessor's office in Oregon City. The office was located on the second floor of a building with a back stairway used by the employees. The building had been originally owned by defendant's predecessors, James and Kay Praggastis, who leased the top floor to Clackamas County for use by the assessor's office. The county took possession in January, 1968, and the entire building was sold to defendant Bernard Motors, Inc., in April, 1969. Prior to the sale to defendant, and while the assessor's office was moving into the building, a chip was knocked out of a concrete step on the back stairs when the assessor was hauling heavy file cases. The step remained in that condition for about two years before plaintiff, who knew about the defective step, slipped and fell in August, 1971.

The plaintiff contends that the trial court erred in refusing to admit portions of a lease between Clackamas County and James and Kay Praggastis, from whom defendant purchased the property. The plaintiff contends the portion of the lease offered imposed a duty upon the defendant "to repair structural defects within the building" and that it was a jury question whether the chipped step was a structural defect.[1]

---

[1] The lease stated:

*"TENANT agrees to maintain and keep in good repair the interior of the leased premises.* TENANT agrees to surrender the leased premises in good condition, reasonable use and fair wear and tear excepted. *LANDLORD* shall keep the exterior of the leased premises in good order and repair and shall maintain the same including the parking area and sidewalks and *shall be responsible for all interior repair relating to structure of the building.* TENANT shall notify LANDLORD of any repairs which are necessary to the sidewalk, parking area, exterior area of the building or the building structurally.

■ It is not necessary for us to decide whether the lease required the tenant or the landlord to repair the step, or whether the chip on the step constituted a structural defect. Assuming that the duty was upon the defendant landlord, the law is well established that the landlord is entitled to notice and a reasonable opportunity to make the repairs before he is liable to the lessee. *McWilliam v. Phillips Petroleum, Inc.*, 269 Or 526, 525 P2d 1011 (1974); *Schenk v. Lamp*, 229 Or 72, 365 P2d 1068 (1961); *Bickham v. Reynolds et ux*, 224 Or 194, 355 P2d 756 (1960); *Asheim v. Fahey et al*, 170 Or 330, 133 P2d 246, 145 ALR 1092 (1943). *See also* Prosser, Torts (4th ed) 410, § 63 (1971).

No notice of the chip in the step was given by the tenant to the defendant. The assessor testified that he had not requested repairs from the defendant and did not report the defective step to the county commissioners. Neither was there evidence of knowledge by defendant independent of notice from the tenant. The assessor testified that at the time the defendant was negotiating for the purchase of the building, the defendant came to the assessor's office and the assessor gave him permission to "wander through" and to "look around." There was no further evidence that defendant inspected the building or any portion thereof.

■ As there was no evidence of notice directly or indirectly to the defendant of the chip in the step, the defendant cannot be held liable for failure to repair.

The directed verdict was properly granted.

Affirmed.

---

LANDLORD shall not be obligated to paint the exterior portions of the building except as needed. TENANT shall not cut into the roof or exterior walls without the written consent of the LANDLORD." (Emphasis added.)